LATHAM & WATKINS LLP
  Steven M. Bauer (Bar No. 135067)
     steven.bauer@lw.com
  Margaret A. Tough (Bar No. 218056)
     margaret.tough@lw.com
  Evangeline A.Z. Burbidge (Bar No. 266966)
     evangeline.burbidge@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-2562
Telephone:   415.391.0600
Facsimile:   415.395.8095

Attorneys for Petitioners

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHASTA STRATEGIC INVESTMENT FUND, LLC; and PRESIDIO GROWTH LLC (Tax Matters Partners), *et al.*,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent.<br><br>And All Related Cases | CASE NO. C-04-4264-RS<br><br>Related to Cases No. C-04-4309-RS, C-04-4398-RS, C-04-4964-RS, C-05-1123-RS, C-05-1996-RS, C-05-2835-RS, and C-05-3887-RS<br><br>DECLARATION OF ROBERT PFAFF IN SUPPORT OF PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION FOR SUMMARY JUDGMENT<br><br>Date:    June 20, 2013<br>Time:   1:30 p.m.<br>Place:   Courtroom 3, 17th Floor<br>            Hon. Richard Seeborg |

I, Robert Pfaff, declare as follows:

1. I was an officer of Presidio Advisory Services, LLC, and have personal knowledge of the following:

2. I was convicted of several counts of tax evasion following the trial in *United States v. Stein*. I was acquitted of the main conspiracy in that case, which included allegations that the entire BLIPS investment program was illegal. I did not testify at trial. I am now serving a 97-month prison sentence.

3. Presidio Advisory Services, LLC managed both Presidio Growth, LLC and Presidio Resources, LLC (collectively, "Presidio").

4. Presidio Growth, LLC was the managing member and tax matters partner of a number of strategic investment funds or "SIFs." These SIFs included, among others, Belford Strategic Investment Fund, LLC, Sanford Strategic Investment Fund, LLC, Shasta Strategic Investment Fund, LLC, Sill Strategic Investment Fund, LLC, and the other funds involved in the above-captioned action. Each of these SIFs was structured in the same way and exhibits regarding Belford Strategic Investment Fund, LLC would be representative of the manner in which all funds were structured.

5. Along with Presidio Growth, LLC, Presidio Resources, LLC was another member in these SIFs, along with a third member who was a client-owned LLC. This client-owned LLC contributed the majority of capital to the partnership and owned a 90% interest in the company. The SIFs set out to undertake a series of transactions under the Bond Linked Issue Premium Structure ("BLIPS") program designed to provide investment returns for the principals.

6. I do not believe these transactions were a "sham" or an illegal "tax shelter." They were transactions, based on the Internal Revenue Code provisions, which had the possibility (predicted by tax experts at KPMG, Brown & Wood and elsewhere as "more likely than not") to be entitled to favorable tax treatment. I do not believe that they fit the Internal Revenue Code definition of "tax shelter." Presidio received a legal opinion from Holland & Hart on this issue as well.

7. The various transactions concerning the BLIPS investments were well-

documented, and all of this documentation has been provided to the government and others in the dozen years since these investments were completed. To understand the facts concerning the transactions, one need only review and understand the deal documents.

8. Presidio recruited David Amir Makov to conceive and to execute the BLIPS investment strategy. We understood Mr. Makov to be a highly successful investment manager, particularly skilled with derivatives. He received a great deal of money for his expertise and work at Presidio.

9. Mr. Makov frequently assured me that the BLIPS investment program had a reasonable chance of making a profit, over and above fees and costs. He explained the program and I believed him. As shown in the documentation, he explained to me and to investors that many currencies had broken their pegs in the 1990s and that investors who had trades that were short sales of those currencies made very good returns. I continue to believe that the program had a reasonable chance of making a profit. Had the currency peg for the Argentine peso broke when Presidio and the SIFs were invested in the BLIPS investment program (as opposed to a year or so later), I believe all investors and Presidio would have made a large amount of money.

10. I understand that the BLIPS program offered investors a low probability of very large profits, which is an investment choice that many investors, particularly wealthy investors, rationally make all the time. I understood that these type of investments were high-risk, high-reward and those with the right investment at the right time could make a good deal of money if the foreign currency broke its peg and devalued. I also understood that, as with all high-risk transactions, this could result in an investor not making any profit, or losing most or all of his money.

11. It was my understanding that each SIF made it clear that the client-owned LLC and its member were not looking to any Presidio entity for tax advice relating to any of the tax implications of participating in the SIF. KPMG and Brown & Wood provided lengthy legal opinion letters concerning the predicted tax treatment of the investment program, including that the investments met the IRS standards for economic substance. Presidio relied on those opinions. Moreover, it was and is my understanding that many investors had their own financial

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. C-04-4264-RS    2    DECL. OF ROBERT PFAFF IN SUPPORT OF PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

1  and tax advisors as well.

2      12.    It was my and Presidio's understanding that the loan was important for the hoped-
3  for tax benefits, but it was also important as a source of collateral for the risky foreign currency
4  investments.  I believed at the time, and continue to believe today, that major banks would not
5  permit investors to enter the BLIPS large currency forward contracts without significant
6  collateral on deposit.

7      13.    I also believe that a so-called "premium loan" is one of many kinds of loan
8  arrangements that an investor can rationally choose.  Mr. Makov explained this to some extent in
9  his deposition.  KPMG's Washington National Tax Practice and Brown & Wood opined that it
10 was more likely than not that premium loans in certain circumstances could lead to tax benefits
11 and I believed in them and in their analysis.  In particular, I was with KPMG's tax practice for
12 over twenty years, twelve as a tax partner.  I learned that I could rely upon the advice of
13 Washington National Tax.  Never once in this twenty year history did I witness an error in
14 judgment or in the tax law by this esteemed group.  I disclosed all relevant facts to Washington
15 National Tax and therefore believed that I could rely upon the advice they gave concerning the
16 tax treatment of BLIPS.

18 I declare under penalty of perjury that the foregoing is true and correct.  Executed at
19 Sheridan, Oregon on April 18, 2013.

21                                         /s/ Robert Pfaff
22                                           Robert Pfaff

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. C-04-4264-RS      3      DECL. OF ROBERT PFAFF IN SUPPORT OF PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

**CIVIL L.R. 5-1(i)(3) ATTESTATION OF CONCURRENCE OF SIGNATORY**

Pursuant to L.R. 5-1(i)(3), I hereby attest that concurrence in the electronic filing of this document has been obtained from the signatory.

Dated: April 18, 2013

By /s/ Steven M. Bauer
Steven M. Bauer
Attorneys for Petitioners

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO. C-04-4264-RS 4 DECL. OF ROBERT PFAFF IN SUPPORT OF PETITIONERS' OPPOSITION TO RESPONDENT'S MOTION FOR SUMMARY JUDGMENT