

**U.S. Department of Justice**

**Tax Division**

|  |  |
|---|---|
| | *Please reply to:* *Office of Civil Litigation* |
| *Facsimile No. (202) 307-0054* | *P.O. Box 682* |
| *Trial Attorney: James E. Weaver* | *Ben Franklin Station* |
| *Attorney's Direct Line: (202) 305-4929* | *Washington, D.C. 20044* |

TA:RRW:JWeaver
5-11-21899
CMN 2005100426

**COPY TO JUDGE**

August 22, 2014



**VIA FEDERAL EXPRESS - OVERNIGHT**
The Honorable Richard Seeborg
United States District Judge
Northern District of California
United States Courthouse
450 Golden Gate Ave
San Francisco, CA 94102

Re:  *Shasta Strategic Investment Fund, LLC v. United States*
    Case No. C-04-4264 (N.D. Cal) - (and related cases)

Dear Judge Seeborg:

We are submitting this letter brief pursuant to the Court's Opinion of July 31, 2014. (Op. 31:25-32:1) (instructing the United States to notify the Court if it wishes to pursue a determination as to the applicability of a negligence-based penalty arising out of the conduct of general partner Presidio Growth.) If, after consideration of two additional penalty-related issues addressed below (and any further briefing), the Court concludes that it cannot enter a final judgment on the papers in favor of the United States as to all matters other than the applicability of a negligence penalty,[1] then the United States wishes to seek a determination by the Court as to negligence on the part of Presidio. On the other hand, if the Court concludes that the additional issues can be resolved on motion, then the United States does not wish to further pursue the negligence determination in this proceeding.

Having carefully reviewed the Court's Opinion and the parties' briefing, we respectfully raise two additional issues that may need to be addressed in order to fully determine "the applicability of any penalty that could result from an adjustment to a partnership item . . . ." *Woods v. United States*, 134 S.Ct. 557, 564 (2013). These issues concern the "reasonable cause"

---

[1]This would entail a determination that the various adjustments to partnership items made by the IRS in the FPAA notices at issue are correct, including IRS determinations that the various strategic investment funds (LLC-2s) are to be disregarded for tax purposes, based on the Court's holding that the BLIPS transactions at issue lacked economic substance. It would also entail a holding by the Court that IRS determinations with respect to accuracy-related penalties are correct -- excepting any determination as to the applicability of a penalty arising out of negligence on the part of general partner Presidio Growth.

- 2 -

defense raised by the petitioners in their Response (Dkt. No. 233) and the applicability of an accuracy-related penalty attributable to a substantial understatement of tax at the partnership level.

> I. **Have the Petitioners raised a partnership-level "reasonable cause" defense to accuracy-related penalties attributable to negligence, substantial understatement of tax, and/or a valuation misstatement**

The accuracy-related penalties at issue may not be imposed on a taxpayer who can demonstrate reasonable cause for having reported an underpayment of income tax. I.R.C. §§ 6662, 6664(c) (2000); Treas. Reg. §§ 1.6662-1; 1.6664-4 (2000).[2] Reasonable reliance, in good faith, on the opinion of a professional tax advisor may serve as a "reasonable cause" defense to penalties, depending on the specific facts and circumstances. By definition, however, reliance on an advisor's opinion is not reasonable if, among other things, the advice is based on representations that the taxpayer has reason to know may not be true or does not take into account a taxpayer's purposes (and the relative weight of such purposes) for structuring a transaction in a certain manner. *See* Treas. Reg. § 1.6664-4(c)(1). The United States contends, as a matter of law, that the KPMG and Brown & Wood opinions provided to the various "investors" in BLIPS transactions do not meet these minimum threshold requirements. Indeed, an outside law firm representing several such investors identified a number of reasons why it was concerned that the KPMG opinion did not satisfy the reliance requirements set forth in Section 1.6664-4(c)(1). (*See* Dkt. No. 232-20, Ex. DR-5 at V00007744 and the bullet points that follow on pp. V00007746-50). The shortcomings identified in Ex. DR-5 are found in both the final KPMG and Brown & Wood opinions issued to "investors." (*See* Dkt. No. 236-24 (Petitioners' Ex. W (the page numbers in this KPMG final opinion vary from the page numbers referred to in Ex. DR-5)); Dkt. No. 236-25 (Petitioners' Ex. X).)

A managing partner may assert a reasonable cause defense based on his or her own actions or beliefs in a partnership-level proceeding. *See Stobie Creek Inv. v. United States*, 608 F.3d 1366, 1380-83 (Fed Cir. 2010) (considering and rejecting a reasonable cause defense based on the actions of a managing partner); *see also American Boat Company, LLC. v. United States*, 583 F.3d 471, 478-486 (7th Cir. 2009); *Klamath Strategic Inv. Fund v. United States*, 568 F.3d 537, 547-48 (5th Cir. 2009). In the recent *NPR* case, the Fifth Circuit distinguished between consideration of a reasonable cause defense in a partnership level proceeding (*Klamath*), where the trial court had determined that the purported managers of the partnerships (investors Patterson and Nix) had raised reasonable cause defenses,[3] and another partnership-level

---

[2]Hereafter, citations to the Internal Revenue Code and Treasury Regulations refer to the versions in effect in 2000. For the convenience of the Court, the United States has attached copies of the sections cited in this letter.

[3]In contrast to the conclusions drawn by the trial court in *Klamath*, the undisputed facts in this case make absolutely clear that Presidio Growth, through Larson, Makov and Pfaff,

proceeding, *NPR*, where the district court had "focused entirely on the reasonable belief and good faith of each of the individual Taxpayers, not [the partnership's] reasonable belief and good faith." *NPR Investments, L.L.C. v. United States*, 740 F.3d 998, 1014 (5th Cir. 2014). Although the recent *Woods* opinion of the United States Supreme Court does not expressly address the jurisdictional limits of asserting a reasonable cause defense, that opinion does not appear to alter the determinations made by the Fifth, Seventh and Federal Circuits on this issue.

Here, the petitioners raise a reasonable cause defense based on reliance on opinions of tax professionals. (Dkt. No. 233 at 15-16, 28-29). There is some question, however, whether the reasonable cause defense asserted is a partner-level defense, based on the purported reliance by individual non-managing investors on opinions of tax advisors or a partnership-level defense arising out of reliance by Presidio Growth (and its principals) on opinions of advisors.

On the one hand, the sub-heading on page 15 of the petitioners' Response is entitled "Investors Had a Reasonable Belief that the Investment Was More Likely Than Not to be Validated by a Court." Moreover, the KPMG and Brown & Wood opinions are addressed to individual investors, and not to Presidio Growth, or principals/managers Larson, Pfaff or Makov. (Dkt. Nos. 236-24 (Petitioners' Ex. W) & 236-25 (Petitioners' Ex. X)). Those opinions concern matters relating to the inflated tax basis that each investor claimed to have in his or her respective LLC-2 and the ensuing losses claimed upon either the sale of an investor's interest in the LLC-2 or the distribution of assets from the LLC-2 upon withdrawal and subsequent dissolution. (*See id.*)

On the other hand, the petitioners' Response clearly states that Presidio relied on these opinions and refers to deposition testimony of Larson and Makov.[4] (Dkt. No. 234 at 16.) To the extent that the petitioners raise a reasonable cause defense based on the reliance of the managing partner for the LLC-2s, the United States concedes that the Court has jurisdiction to determine whether the defense applies at the partnership level.[5]

But even assuming that Presidio is asserting a "reasonable cause" defense based on its reliance on the opinions of tax professionals, there is no need for the Court to proceed to trial on

---

managed the LLC-2s in all material respects.

[4]As noted in the United States' Reply Brief, although Presidio also refers to an opinion letter it received from Holland & Hart regarding BLIPS (Dkt. No. 233 at 1, 16, 29), it did not see fit to put the opinion letter in evidence. Accordingly, Presidio should not be entitled to rely on it. And in any event, the Holland & Hart letter addressed a distinct question: whether BLIPS had to be registered as a tax shelter under I.R.C. § 6111 (2000). That statute has a different test from the one at issue in the penalty statute, including an intent requirement that only applies to corporate taxpayers. *Compare* § 6111(c), (d), with I.R.C. § 6662(d) (2000).

[5]In its opinion, the Court suggested that the reasonable-cause defense is "a partner-level defense not applicable to the instant proceeding." (Op. 17:16-17 *citing NPR*.) The United States believes it may be appropriate for the Court to clarify that statement.

the issue.

First, any "reasonable cause" defense to the applicability of a penalty attributable to a valuation misstatement, is, in the context of the BLIPS tax shelter, a partner-level defense. As applied by the IRS to basis inflation schemes such as BLIPS, the valuation misstatement penalty arises out of basis inflation that results (purportedly) from the assumption by an LLC-2 of a "premium" loan. But neither Presidio Growth nor Presidio Resources purported to finance their smaller interests in any of the remaining 82 LLC-2s at issue in these related cases. In short, the partnership items to be adjusted with respect to these particular LLC-2s will not result in valuation misstatement penalties against the partners of Presidio Growth (Norwood Holdings and HSM Industries, or, in 2000, HSM Growth) or the partners of Presidio Resources (John Larson and Robert Pfaff). It does not appear that there is "reasonable cause" defense to a valuation misstatement penalty to be raised at the partnership level.

Second, with respect to *any* of the accuracy-related penalties at issue here, the United States believes that further briefing would show, as a matter of law, that Presidio is not entitled to a reasonable cause defense at the partnership level based on reliance on the advice of tax professionals.[6] "The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Treas. Reg. § 1.6664-4(b)(1) (2000). Although the Ninth Circuit has noted that the "[a]ll facts and circumstances" component of a reasonable cause determination entails consideration of subjective factors as well as objective ones, *Hansen v. Commissioner*, 471 F.3d 1021, 1029 (9th Cir. 2006), one need not reach subjective factors in the case of a defense based on reliance on the advice of tax professionals where a taxpayer cannot clear objectively-determinable threshold hurdles set forth in Treas. Reg. § 1.6664-4(c)(1).

Among other things, § 1.6664-4(c)(1) states that reliance on an opinion is not reasonable if the opinion does not take into account a taxpayer's purposes (and the relative weight of such purposes) for structuring a transaction in a certain manner. As noted above, the KPMG and Brown & Woods opinions do not meet this threshold test. Nor is advice reasonable if it is "based upon a representation or assumption which the taxpayer knows, *or has reason to know*, is unlikely to be true, such as an inaccurate representation or assumption as to the taxpayer's purposes for entering into a transaction or for structuring a transaction in a particular manner." *Id.* (emphasis added). Here, the Court has already noted that the opinion letters were based on factual representations such as "Presidio believed there was a reasonable opportunity for Investor to earn a pre-tax profit, in excess of all associated fees and costs, and without regard to any tax benefits that may occur, by participating in the Investment Fund." (Op. 3 n.2 (ECF No. 247).) Even assuming that subjective belief was genuine, it was not reasonable, and Presidio should have known that it was not true. "[N]o rational investor would pursue this strategy for any business reason other than tax avoidance." (Op. 9:7-9; *see also* the bullet points in Ex. DR-5.)

_____

[6] The parties' summary judgment briefing on reasonable cause was much abbreviated. Nor was the oral argument presented by the United States on this issue a model of clarity.

- 5 -

## II.   Is an accuracy-related penalty attributable to a substantial understatement of tax provisionally applicable

In its dispositive briefing, the United States did not seek a determination by the Court as to the applicability of the substantial understatement penalty. Rather, the United States requested a determination that the strategic investment funds at issue constituted tax shelter items for purposes of penalty determinations at the partner level.[7] (Dkt. No. 222 at 44:13-20). This portion of the United States' Brief, in large measure, was carried over from its original dispositive motion filed in March 2013. As reflected in the heading C (Dkt. No. 222 at 44:13-15), counsel for the United States reasoned that the calculations underlying a substantial understatement penalty must occur at the partner level, making it mathematically impossible to address the applicability of the penalty in a partnership-level proceeding. Therefore, with respect to that particular penalty, the United States sought only a determination that the strategic investment funds were tax shelters. In its Opinion, the Court determined, based on objective factors, that the LLC-2s were tax shelters. (Op. at 19:13-21:7.)

In the process of considering the petitioners' assertion of a reasonable cause defense, counsel for the United States re-reviewed the *Woods* decision and applicable Treasury Regulations in effect in 2000. With respect to a defense to a substantial understatement penalty based on a claim of reasonable reliance in good faith on the opinion of tax advisor, the regulations specifically permit consideration of actions taken at the partnership level. *See* Treas. Reg. 1.6662-4(g)(5). And although the *Woods* opinion concerns a determination as to the applicability of a valuation misstatement-based penalty, the reasoning behind the opinion is not cabined to that particular variant of an accuracy-related penalty. Therefore, to fully adjudicate partnership-level penalty determinations pursuant to I.R.C. § 6226(f), and to preclude the potential for a differential in the scope between determinations here as to the applicability accuracy-related penalties and the applicability of defenses to those penalties, the United States recommends that the Court determine whether the substantial understatement penalty may provisionally apply in these cases. The United States further notes that there is no need for a trial on this issue because the reasonable reliance defense to the substantial understatement penalty requires a taxpayer meet the same minimum threshold requirements associated with the reasonable cause defense. *See* Treas. Reg. § 1.6662-4(g)(4)(B)(ii) (referring to Treas. Reg. § 1.6664-4(c)(1)). Here, the petitioners cannot do so, as a matter of law.

//

//

//

---

[7] A determination that a partnership constitutes a tax shelter impacts on how a penalty attributable to an understatement of tax is computed (and limits a taxpayer's defense) by adding a "reasonable belief" requirement to the "substantial authority" requirement. *See* Treas. Reg. 1.6662-4(g).

- 6 -

The legal issues surrounding partnership-level determinations as to the applicability of accuracy-related penalties are complex, and the United States therefore respectfully requests that the Court permit the parties to further brief the issues raised above prior to entry of a final judgment or the setting of a trial schedule as to remaining penalty issues.

Sincerely yours,

JAMES E. WEAVER
Trial Attorney, Tax Division
Civil Trial Section, Western Region

cc: (via e-mail and overnight mail)

Steven Bauer
Margaret Tough
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-2562

John M. Colvin
Chicoine & Hallett PS
719 2nd Avenue, Suite 425
Seattle, WA 98104

David W. Wiechert
Jessica C. Munk
115 Avenida Miramar
San Clemente, CA 92672

Robert W. Wood
Dashiell C. Shapiro
Wood LLP
333 Sacramento Street
San Francisco, CA 94111

**(d) Reasonable basis.**

[T.D. 8381, 56 FR 67497, Dec. 31, 1991; T.D. 8381, 57 FR 6165, Feb. 20, 1992, as amended by T.D. 8519, 59 FR 4794, Feb. 2, 1994; T.D. 8533, 59 FR 12548, Mar. 17, 1994; T.D. 8551, 59 FR 35031, July 8, 1994; T.D. 8617, 60 FR 45663, Sept. 1, 1995; T.D. 8656, 61 FR 4879, Feb. 9, 1996; T.D. 8656, 61 FR 14248, Apr. 1, 1996; T.D. 8790, 63 FR 66434, Dec. 2, 1998]

## § 1.6662-1 Overview of the accuracy-related penalty.

Section 6662 imposes an accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return that is attributable to one or more of the following:

(a) Negligence or disregard of rules or regulations;

(b) Any substantial understatement of income tax;

(c) Any substantial valuation misstatement under chapter 1;

(d) Any substantial overstatement of pension liabilities; or

(e) Any substantial estate or gift tax valuation understatement.

Sections 1.6662-1 through 1.6662-5 address only the first three components of the accuracy-related penalty, i.e., the penalties for negligence or disregard of rules or regulations, substantial understatements of income tax, and substantial (or gross) valuation misstatements under chapter 1. The penalties for disregard of rules or regulations and for a substantial understatement of income tax may be avoided by adequately disclosing certain information as provided in § 1.6662-3(c) and §§ 1.6662-4(e) and (f), respectively. The penalties for negligence and for a substantial (or gross) valuation misstatement under chapter 1 may not be avoided by disclosure. No accuracy-related penalty may be imposed on any portion of an underpayment if there was reasonable cause for, and the taxpayer acted in good faith with respect to, such portion. The reasonable cause and good faith exception to the accuracy-related penalty is set forth in § 1.6664-4.

[T.D. 8381, 56 FR 67498, Dec. 31, 1991, as amended by T.D. 8617, 60 FR 45664, Sept. 1, 1995]

## § 1.6662-2 Accuracy-related penalty.

(a) *In general.* Section 6662(a) imposes an accuracy-related penalty on any portion of an underpayment of tax (as defined in section 6664(a) and § 1.6664-2) required to be shown on a return if such portion is attributable to one or more of the following types of misconduct:

(1) Negligence or disregard of rules or regulations (see § 1.6662-3);

(2) Any substantial understatement of income tax (see § 1.6662-4); or

(3) Any substantial (or gross) valuation misstatement under chapter 1 ("substantial valuation misstatement" or "gross valuation misstatement"), provided the applicable dollar limitation set forth in section 6662(e)(2) is satisfied (see § 1.6662-5).

The accuracy-related penalty applies only in cases in which a return of tax is filed, except that the penalty does not apply in the case of a return prepared by the Secretary under the authority of section 6020(b). The accuracy-related penalty under section 6662 and the penalty under section 6651 for failure to timely file a return of tax may both be imposed on the same portion of an underpayment if a return is filed, but is filed late. The fact that a return is filed late, however, is not taken into account in determining whether an accuracy-related penalty should be imposed. No accuracy-related penalty may be imposed on any portion of an underpayment of tax on which the fraud penalty set forth in section 6663 is imposed.

(b) *Amount of penalty*—(1) *In general.* The amount of the accuracy-related penalty is 20 percent of the portion of an underpayment of tax required to be shown on a return that is attributable to any of the types of misconduct listed in paragraphs (a)(1) through (a)(3) of this section, except as provided in paragraph (b)(2) of this section.

(2) *Increase in penalty for gross valuation misstatement.* In the case of a gross valuation misstatement, as defined in section 6662(h)(2) and § 1.6662-5(e)(2), the amount of the accuracy-related penalty is 40 percent of the portion of an underpayment of tax required to be shown on a return that is attributable to the gross valuation misstatement, provided the applicable

dollar limitation set forth in section 6662(e)(2) is satisfied.

(c) *No stacking of accuracy-related penalty components.* The maximum accuracy-related penalty imposed on a portion of an underpayment may not exceed 20 percent of such portion (40 percent of the portion attributable to a gross valuation misstatement), notwithstanding that such portion is attributable to more than one of the types of misconduct described in paragraph (a) of this section. For example, if a portion of an underpayment of tax required to be shown on a return is attributable both to negligence and a substantial understatement of income tax, the maximum accuracy-related penalty is 20 percent of such portion. Similarly, the maximum accuracy-related penalty imposed on any portion of an underpayment that is attributable both to negligence and a gross valuation misstatement is 40 percent of such portion.

(d) *Effective dates*—(1) *Returns due before January 1, 1994.* Section 1.6662-3(c) and §§ 1.6662-4 (e) and (f) (relating to methods of making adequate disclosure) (as contained in 26 CFR part 1 revised April 1, 1995) apply to returns the due date of which (determined without regard to extensions of time for filing) is after December 31, 1991, but before January 1, 1994. Except as provided in the preceding sentence and in paragraphs (d)(2), (3), and (4) of this section, §§ 1.6662-1 through 1.6662-5 apply to returns the due date of which (determined without regard to extensions of time for filing) is after December 31, 1989, but before January 1, 1994. To the extent the provisions of these regulations were not reflected in the statute as amended by the Omnibus Budget Reconciliation Act of 1989 (OBRA 1989), in Notice 90-20, 1990-1 C.B. 328, or in rules and regulations in effect prior to March 4, 1991 (to the extent not inconsistent with the statute as amended by OBRA 1989), these regulations will not be adversely applied to a taxpayer who took a position based upon such prior rules on a return filed before January 1, 1992.

(2) *Returns due after December 31, 1993.* Except as provided in paragraphs (d)(3) and (4) of this section and the last sentence of this paragraph (d)(2), the pro-

visions of §§ 1.6662-1 through 1.6662-4 and § 1.6662-7 (as revised to reflect the changes made to the accuracy-related penalty by the Omnibus Budget Reconciliation Act of 1993) and of § 1.6662-5 apply to returns the due date of which (determined without regard to extensions of time for filing) is after December 31, 1993. These changes include raising the disclosure standard for the penalties for disregarding rules or regulations and for a substantial understatement of income tax from not frivolous to reasonable basis, eliminating the disclosure exception for the negligence penalty, and providing guidance on the meaning of reasonable basis. The Omnibus Budget Reconciliation Act of 1993 changes relating to the penalties for negligence or disregard of rules or regulations will not apply to returns (including qualified amended returns) that are filed on or before March 14, 1994, but the provisions of §§ 1.6662-1 through 1.6662-3 (as contained in 26 CFR part 1 revised April 1, 1995) relating to those penalties will apply to such returns.

(3) *Special rules for tax shelter items.* Sections 1.6662-4(g)(1) and 1.6662-4(g)(4) apply to returns the due date of which (determined without regard to extensions of time for filing) is after September 1, 1995. Except as provided in the last sentence of this paragraph (d)(3), §§ 1.6662-4(g)(1) and 1.6662-4(g)(4) (as contained in 26 CFR part 1 revised April 1, 1995) apply to returns the due date of which (determined without regard to extensions of time for filing) is on or before September 1, 1995 and after December 31, 1989. For transactions occurring after December 8, 1994, §§ 1.6662-4(g)(1) and 1.6662-4(g)(2) (as contained in 26 CFR part 1 revised April 1, 1995) are applied taking into account the changes made to section 6662(d)(2)(C) (relating to the substantial understatement penalty for tax shelter items of corporations) by section 744 of Title VII of the Uruguay Round Agreements Act, Pub. L. 103-465 (108 Stat. 4809).

(4) *Special rules for reasonable basis.* Section 1.6662-3(b)(3) applies to returns filed on or after December 2, 1998.

[T.D. 8381, 56 FR 67498, Dec. 31, 1991, as amended by T.D. 8617, 60 FR 45664, Sept. 1, 1995; T.D. 8790, 63 FR 66434, Dec. 2, 1998]

## §1.6662-3 Negligence or disregard of rules or regulations.

(a) *In general.* If any portion of an underpayment, as defined in section 6664(a) and §1.6664-2, of any income tax imposed under subtitle A of the Code that is required to be shown on a return is attributable to negligence or disregard of rules or regulations, there is added to the tax an amount equal to 20 percent of such portion. The penalty for disregarding rules or regulations does not apply, however, if the requirements of §1.6662-3(c)(1) are satisfied and the position in question is adequately disclosed as provided in §1.6662-3(c)(2), or to the extent that the reasonable cause and good faith exception to this penalty set forth in §1.6664-4 applies. In addition, if a position with respect to an item is contrary to a revenue ruling or notice (other than a notice of proposed rulemaking) issued by the Internal Revenue Service and published in the Internal Revenue Bulletin, this penalty does not apply if the position has a realistic possibility of being sustained on its merits. See §1.6694-2(b) of the preparer penalty regulations for a description of the realistic possibility standard.

(b) *Definitions and rules*—(1) *Negligence.* The term *negligence* includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return. "Negligence" also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. A return position that has a reasonable basis as defined in paragraph (b)(3) of this section is not attributable to negligence. Negligence is strongly indicated where—

(i) A taxpayer fails to include on an income tax return an amount of income shown on an information return, as defined in section 6724(d)(1);

(ii) A taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction, credit or exclusion on a return which would seem to a reasonable and prudent person to be "too good to be true" under the circumstances;

(iii) A partner fails to comply with the requirements of section 6222, which requires that a partner treat partnership items on its return in a manner that is consistent with the treatment of such items on the partnership return (or notify the Secretary of the inconsistency); or

(iv) A shareholder fails to comply with the requirements of section 6242, which requires that an S corporation shareholder treat subchapter S items on its return in a manner that is consistent with the treatment of such items on the corporation's return (or notify the Secretary of the inconsistency).

(2) *Disregard of rules or regulations.* The term *disregard* includes any careless, reckless or intentional disregard of rules or regulations. The term "rules or regulations" includes the provisions of the Internal Revenue Code, temporary or final Treasury regulations issued under the Code, and revenue rulings or notices (other than notices of proposed rulemaking) issued by the Internal Revenue Service and published in the Internal Revenue Bulletin. A disregard of rules or regulations is "careless" if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. A disregard is "reckless" if the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances which demonstrate a substantial deviation from the standard of conduct that a reasonable person would observe. A disregard is "intentional" if the taxpayer knows of the rule or regulation that is disregarded. Nevertheless, a taxpayer who takes a position contrary to a revenue ruling or a notice has not disregarded the ruling or notice if the contrary position has a realistic possibility of being sustained on its merits.

(3) *Reasonable basis.* Reasonable basis is a relatively high standard of tax reporting, that is, significantly higher than not frivolous or not patently improper. The reasonable basis standard is not satisfied by a return position that is merely arguable or that is merely a colorable claim. If a return position is reasonably based on one or more of the authorities set forth in §1.6662-4(d)(3)(iii) (taking into account the relevance and persuasiveness of the

authorities, and subsequent developments), the return position will generally satisfy the reasonable basis standard even though it may not satisfy the substantial authority standard as defined in §1.6662–4(d)(2). (See §1.6662–4(d)(3)(ii) for rules with respect to relevance, persuasiveness, subsequent developments, and use of a well-reasoned construction of an applicable statutory provision for purposes of the substantial understatement penalty.) In addition, the reasonable cause and good faith exception in §1.6664–4 may provide relief from the penalty for negligence or disregard of rules or regulations, even if a return position does not satisfy the reasonable basis standard.

(c) *Exception for adequate disclosure*—(1) *In general.* No penalty under section 6662(b)(1) may be imposed on any portion of an underpayment that is attributable to a position contrary to a rule or regulation if the position is disclosed in accordance with the rules of paragraph (c)(2) of this section and, in case of a position contrary to a regulation, the position represents a good faith challenge to the validity of the regulation. This disclosure exception does not apply, however, in the case of a position that does not have a reasonable basis or where the taxpayer fails to keep adequate books and records or to substantiate items properly.

(2) *Method of disclosure.* Disclosure is adequate for purposes of the penalty for disregarding rules or regulations if made in accordance with the provisions of §§1.6662–4(f)(1), (3), (4), and (5), which permit disclosure on a properly completed and filed Form 8275 or 8275–R, as appropriate. In addition, the statutory or regulatory provision or ruling in question must be adequately identified on the Form 8275 or 8275–R, as appropriate. The provisions of §1.6662–4(f)(2), which permit disclosure in accordance with an annual revenue procedure for purposes of the substantial understatement penalty, do not apply for purposes of this section.

(d) *Special rules in the case of carrybacks and carryovers*—(1) *In general.* The penalty for negligence or disregard of rules or regulations applies to any portion of an underpayment for a year to which a loss, deduction or credit is carried, which portion is attrib-

utable to negligence or disregard of rules or regulations in the year in which the carryback or carryover of the loss, deduction or credit arises (the "loss or credit year").

(2) *Transition rule for carrybacks to pre-1990 years.* A 20 percent penalty under section 6662(b)(1) is imposed on any portion of an underpayment for a carryback year, the return for which is due (without regard to extensions) before January 1, 1990, if—

(i) That portion is attributable to negligence or disregard of rules or regulations in a loss or credit year; and

(ii) The return for the loss or credit year is due (without regard to extensions) after December 31, 1989.

(3) *Example.* The following example illustrates the provisions of paragraph (d) of this section. This example does not take into account the reasonable cause exception under §1.6664–4.

*Example.* Corporation M is a C corporation. In 1990, M had a loss of $200,000 before taking into account a deduction of $350,000 that M claimed as an expense in careless disregard of the capitalization requirements of section 263 of the Code. M failed to make adequate disclosure of the item for 1990. M reported a $550,000 loss for 1990 and carried back the loss to 1987 and 1988. M had reported taxable income of $400,000 for 1987 and $200,000 for 1988, before application of the carryback. The carryback eliminated all of M's taxable income for 1987 and $150,000 of taxable income for 1988. After disallowance of the $350,000 expense deduction and allowance of a $35,000 depreciation deduction with respect to the capitalized amount, the correct loss for 1990 was determined to be $235,000. Because there is no underpayment for 1990, the penalty for negligence or disregard of rules or regulations does not apply for 1990. However, as a result of the 1990 adjustments, the loss carried back to 1987 is reduced from $550,000 to $235,000. After application of the $235,000 carryback, M has taxable income of $165,000 for 1987 and $200,000 for 1988. This adjustment results in underpayments for 1987 and 1988 that are attributable to the disregard of rules or regulations on the 1990 return. Therefore, the 20 percent penalty rate applies to the 1987 and 1988 underpayments attributable to the disallowed carryback.

[T.D. 8381, 56 FR 67498, Dec. 31, 1991, as amended by T.D. 8617, 60 FR 45664, Sept. 1, 1995; T.D. 8790, 63 FR 66434, Dec. 2, 1998]

## §1.6662-4  Substantial understatement of income tax.

(a) *In general.* If any portion of an underpayment, as defined in section 6664(a) and §1.6664-2, of any income tax imposed under subtitle A of the Code that is required to be shown on a return is attributable to a substantial understatement of such income tax, there is added to the tax an amount equal to 20 percent of such portion. Except in the case of any item attributable to a tax shelter (as defined in paragraph (g)(2) of this section), an understatement is reduced by the portion of the understatement that is attributable to the tax treatment of an item for which there is substantial authority, or with respect to which there is adequate disclosure. General rules for determining the amount of an understatement are set forth in paragraph (b) of this section and more specific rules in the case of carrybacks and carryovers are set forth in paragraph (c) of this section. The rules for determining when substantial authority exists are set forth in §1.6662-4(d). The rules for determining when there is adequate disclosure are set forth in §1.6662-4 (e) and (f). This penalty does not apply to the extent that the reasonable cause and good faith exception to this penalty set forth in §1.6664-4 applies.

(b) *Definitions and computational rules*—(1) *Substantial.* An understatement (as defined in paragraph (b)(2) of this section) is "substantial" if it exceeds the greater of—

(i) 10 percent of the tax required to be shown on the return for the taxable year (as defined in paragraph (b)(3) of this section); or

(ii) $5,000 ($10,000 in the case of a corporation other than an S corporation (as defined in section 1361(a)(1)) or a personal holding company (as defined in section 542)).

(2) *Understatement.* Except as provided in paragraph (c)(2) of this section (relating to special rules for carrybacks), the term "understatement" means the excess of—

(i) The amount of the tax required to be shown on the return for the taxable year (as defined in paragraph (b)(3) of this section), over

(ii) The amount of the tax imposed which is shown on the return for the taxable year (as defined in paragraph (b)(4) of this section), reduced by any rebate (as defined in paragraph (b)(5) of this section).

The definition of understatement also may be expressed as—

Understatement = X − (Y − Z)

where $X$ = the amount of the tax required to be shown on the return; $Y$ = the amount of the tax imposed which is shown on the return; and $Z$ = any rebate.

(3) *Amount of the tax required to be shown on the return.* The "amount of the tax required to be shown on the return" for the taxable year has the same meaning as the "amount of income tax imposed" as defined in §1.6664-2(b).

(4) *Amount of the tax imposed which is shown on the return.* The "amount of the tax imposed which is shown on the return" for the taxable year has the same meaning as the "amount shown as the tax by the taxpayer on his return," as defined in §1.6664-2(c), except that—

(i) There is no reduction for the excess of the amount described in §1.6664-2(c)(1)(i) over the amount described in §1.6664-2(c)(1)(ii), and

(ii) The tax liability shown by the taxpayer on his return is recomputed as if the following items had been reported properly:

(A) Items (other than tax shelter items as defined in §1.6662-4(g)(3)) for which there is substantial authority for the treatment claimed (as provided in §1.6662-4(d)),

(B) Items (other than tax shelter items as defined in §1.6662-4(g)(3)) with respect to which there is adequate disclosure (as provided in §1.6662-4 (e) and (f)),

(C) Tax shelter items (as defined in §1.6662-4(g)(3)) for which there is substantial authority for the treatment claimed (as provided in §1.6662-4(d)), and with respect to which the taxpayer reasonably believed that the tax treatment of the items was more likely than not the proper tax treatment (as provided in §1.6662-4(g)(4)).

(5) *Rebate.* The term *rebate* has the meaning set forth in §1.6664-2(e), except that—

(i) "Amounts not so shown previously assessed (or collected without assessment)" includes only amounts not so shown previously assessed (or collected without assessment) as a deficiency, and

(ii) The amount of the rebate is determined as if any items to which the rebate is attributable that are described in paragraph (b)(4) of this section had received the proper tax treatment.

(5) *Examples.* The following examples illustrate the provisions of paragraph (b) of this section. These examples do not take into account the reasonable cause exception under § 1.6664-4:

*Example 1.* In 1990, Individual A, a calendar year taxpayer, files a return for 1989, which shows taxable income of $18,200 and tax liability of $2,734. Subsequent adjustments on audit increase taxable income to $51,500 and tax liability to $12,339. There was substantial authority for an item resulting in an adjustment that increases taxable income by $5,300. The item is not a tax shelter item. In computing the amount of the understatement, the amount of tax shown on A's return is determined as if the item for which there was substantial authority had been given the proper tax treatment. Thus, the amount of tax that is treated as shown on A's return is $4,176, i.e., the tax on $23,500 ($18,200 taxable income actually shown on A's return plus $5,300, the amount of the adjustment for which there was substantial authority). The amount of the understatement is $8,163, i.e., $12,339 (the amount of tax required to be shown) less $4,176 (the amount of tax treated as shown on A's return after adjustment for the item for which there was substantial authority). Because the $8,163 understatement exceeds the greater of 10 percent of the tax required to be shown on the return for the year, i.e., $1,234 ($12,339 × .10) or $5,000, A has a substantial understatement of income tax for the year.

*Example 2.* Individual B, a calendar year taxpayer, files a return for 1990 that fails to include income reported on an information return, Form 1099, that was furnished to B. The Service detects this omission through its document matching program and assesses $3,000 in unreported tax liability. B's return is later examined and as a result of the examination the Service makes an adjustment to B's return of $4,000 in additional tax liability. Assuming there was neither substantial authority nor adequate disclosure with respect to the items adjusted, there is an understatement of $7,000 with respect to B's return. There is also an underpayment of $7,000. (See § 1.6664-2.) The amount of the understatement is not reduced by imposition of

a negligence penalty on the $3,000 portion of the underpayment that is attributable to the unreported income. However, if the Service does impose the negligence penalty on this $3,000 portion, the Service may only impose the substantial understatement penalty on the remaining $4,000 portion of the underpayment. (See § 1.6662-2(c), which prohibits stacking of accuracy-related penalty components.)

(c) *Special rules in the case of carrybacks and carryovers*—(1) *In general.* The penalty for a substantial understatement of income tax applies to any portion of an underpayment for a year to which a loss, deduction or credit is carried that is attributable to a "tainted item" for the year in which the carryback or carryover of the loss, deduction or credit arises (the "loss or credit year"). The determination of whether an understatement is substantial for a carryback or carryover year is made with respect to the return of the carryback or carryover year. "Tainted items" are taken into account with items arising in a carryback or carryover year to determine whether the understatement is substantial for that year.

(2) *Understatements for carryback years not reduced by amount of carrybacks.* The amount of an understatement for a carryback year is not reduced on account of a carryback of a loss, deduction or credit to that year.

(3) *Tainted items defined*—(i) *In general.* Except in the case of a tax shelter item (as defined in paragraph (g)(3) of this section), a "tainted item" is any item for which there is neither substantial authority nor adequate disclosure with respect to the loss or credit year.

(ii) *Tax shelter items.* In the case of a tax shelter item (as defined in paragraph (g)(3) of this section), a "tainted item" is any item for which there is not, with respect to the loss or credit year, both substantial authority and a reasonable belief that the tax treatment is more likely than not the proper treatment.

(4) *Transition rule for carrybacks to pre-1990 years.* A 20 percent penalty under section 6662(b)(2) is imposed on any portion of an underpayment for a carryback year, the return for which is due (without regard to extensions) before January 1, 1990, if—

(i) That portion is attributable to one or more "tainted items" (as defined in paragraph (c)(3) of this section) arising in a loss or credit year; and

(ii) The return for the loss or credit year is due (without regard to extensions) after December 31, 1989.

The preceding sentence applies only if the understatement in the carryback year is substantial. See *Example 2* in paragraph (c)(5) of this section.

(5) *Examples.* The following examples illustrate the rules of paragraph (c) of this section regarding carrybacks and carryovers. These examples do not take into account the reasonable cause exception under §1.6664-4.

*Example 1.* (i) Corporation N, a calendar year taxpayer, is a C corporation. N was formed on January 1, 1987, and timely filed the following income tax returns:

[in dollars]

|  | Tax Year | | | |
|---|---|---|---|---|
|  | 1987 | 1988 | 1989 | 1990 (before NOLCO) |
| Taxable income | 30,000 | 100,000 | (300,000) | 50,000 |
| Tax liability | 4,575 | 22,250 | .............. | 7,500 |

(ii) During 1990, N files Form 1139, Corporation Application for Tentative Refund, to carry back the NOL generated in 1989 (NOLCB). N received refunds of $4,575 for 1987 and $22,250 for 1988.

(iii) For tax year 1990, N carries over $50,000 of the 1989 loss to offset $50,000 of income earned in 1990 and reduce taxable income to zero. N would have reported $7,500 of tax liability for 1990 if it were not for use of the net operating loss carryover (NOLCO). N assumes there is a remaining NOLCO of $120,000 to be applied for tax year 1991.

(iv) In June 1991, the Service completes its examination of the 1989 loss year return and makes the following adjustment:

| Taxable income per 1989 return | ($300,000) |
|---|---|
| Adjustment: Unreported income | 310,000 |
| | |
| Corrected taxable income | $10,000 |
| Corrected tax liability | $1,500 |

(v) There was not substantial authority for N's treatment of the items comprising the 1989 adjustment and N did not make adequate disclosure.

(vi) As a result of the adjustment to the 1989 return, N had an understatement of $4,575 for tax year 1987; an understatement of $22,250 for tax year 1988; an understatement of $1,500 for tax year 1989; and an understate-

ment of $7,500 for tax year 1990. Only the $22,250 understatement for 1988 is a substantial understatement, i.e., it exceeds the greater of (a) $2,225 (10 percent of the tax required to be shown on the return for the taxable year (.10 X $22,250)) or (b) $10,000. The underpayment for 1988 is subject to a penalty rate of 20 percent.

*Example 2.* The facts are the same as in *Example 1*, except that in addition to examining the 1989 return, the Service also examines the 1987 return and makes an adjustment that results in an understatement. (This adjustment is unrelated to the adjustment on the 1987 return for the disallowance of the NOLCB from 1989.) If the understatement resulting from the adjustment to the 1987 return, when combined with the understatement resulting from the disallowance of the NOLCB from 1989, exceeds the greater of (a) 10 percent of the tax required to be shown on the return for 1987 or (b) $10,000, the underpayment for 1987 will also be subject to a substantial understatement penalty. The portion of the underpayment attributable to the adjustment unrelated to the disallowance of the NOLCB will be subject to a penalty rate of 25 percent under former section 6661. The portion of the underpayment attributable to the disallowance of the NOLCB will be subject to a penalty rate of 20 percent under section 6662.

*Example 3.* Individual P, a calendar year single taxpayer, files his 1990 return reporting taxable income of $10,000 and a tax liability of $1,504. An examination of the 1990 return results in an adjustment for unreported income of $25,000. There was not substantial authority for P's failure to report the income, and P did not make adequate disclosure with respect to the unreported income. P's correct tax liability for 1990 is determined to be $7,279, resulting in an understatement of $5,775 (the difference between the amount of tax required to be shown on the return ($7,279) and the tax shown on the return ($1,504)). Because the understatement exceeds the greater of (a) $728 (10 percent of the tax required to be shown on the return (.10 × $7,279)) or (b) $5,000, the understatement is substantial. Subsequently, P files his 1993 return showing a net operating loss. The loss is carried back to his 1990 return, reducing his taxable income for 1990 to zero. However, the amount of the understatement for 1990 is not reduced on account of the NOLCB to that year. P is subject to the 20 percent penalty rate under section 6662 on the underpayment attributable to the substantial understatement for 1990, notwithstanding that the tax required to be shown on the return for that year, after application of the NOLCB, is zero.

(d) *Substantial authority—(1) Effect of having substantial authority.* If there is

substantial authority for the tax treatment of an item, the item is treated as if it were shown properly on the return for the taxable year in computing the amount of the tax shown on the return. Thus, for purposes of section 6663(d), the tax attributable to the item is not included in the understatement for that year. (For special rules relating to tax shelter items see § 1.6662-4(g).)

(2) *Substantial authority standard.* The substantial authority standard is an objective standard involving an analysis of the law and application of the law to relevant facts. The substantial authority standard is less stringent than the more likely than not standard (the standard that is met when there is a greater than 50-percent likelihood of the position being upheld), but more stringent than the reasonable basis standard as defined in § 1.6662-3(b)(3). The possibility that a return will not be audited or, if audited, that an item will not be raised on audit, is not relevant in determining whether the substantial authority standard (or the reasonable basis standard) is satisfied.

(3) *Determination of whether substantial authority is present* —(i) *Evaluation of authorities.* There is substantial authority for the tax treatment of an item only if the weight of the authorities supporting the treatement is substantial in relation to the weight of authorities supporting contrary treatment. All authorities relevant to the tax treatment of an item, including the authorities contrary to the treatment, are taken into account in determining whether substantial authority exists. The weight of authorities is determined in light of the pertinent facts and circumstances in the manner prescribed by paragraph (d)(3)(ii) of this section. There may be substantial authority for more than one position with respect to the same item. Because the substantial authority standard is an objective standard, the taxpayer's belief that there is substantial authority for the tax treatment of an item is not relevant in determining whether there is substantial authority for that treatment.

(ii) *Nature of analysis.* The weight accorded an authority depends on its relevance and persuasiveness, and the type of document providing the author-

ity. For example, a case or revenue ruling having some facts in common with the tax treatment at issue is not particularly relevant if the authority is materially distinguishable on its facts, or is otherwise inapplicable to the tax treatment at issue. An authority that merely states a conclusion ordinarily is less persuasive than one that reaches its conclusion by cogently relating the applicable law to pertinent facts. The weight of an authority from which information has been deleted, such as a private letter ruling, is diminished to the extent that the deleted information may have affected the authority's conclusions. The type of document also must be considered. For example, a revenue ruling is accorded greater weight than a private letter ruling addressing the same issue. An older private letter ruling, technical advice memorandum, general counsel memorandum or action on decision generally must be accorded less weight than a more recent one. Any document described in the preceding sentence that is more than 10 years old generally is accorded very little weight. However, the persuasiveness and relevance of a document, viewed in light of subsequent developments, should be taken into account along with the age of the document. There may be substantial authority for the tax treatment of an item despite the absence of certain types of authority. Thus, a taxpayer may have substantial authority for a position that is supported only by a well-reasoned construction of the applicable statutory provision.

(iii) *Types of authority.* Except in cases described in paragraph (d)(3)(iv) of this section concerning written determinations, only the following are authority for purposes of determining whether there is substantial authority for the tax treatment of an item: Applicable provisions of the Internal Revenue Code and other statutory provisions; proposed, temporary and final regulations construing such statues; revenue rulings and revenue procedures; tax treaties and regulations thereunder, and Treasury Department and other official explanations of such treaties; court cases; congressional intent as reflected in committee reports,

joint explanatory statements of managers included in conference committee reports, and floor statements made prior to enactment by one of a bill's managers; General Explanations of tax legislation prepared by the Joint Committee on Taxation (the Blue Book); private letter rulings and technical advice memoranda issued after October 31, 1976; actions on decisions and general counsel memoranda issued after March 12, 1981 (as well as general counsel memoranda published in pre-1955 volumes of the Cumulative Bulletin); Internal Revenue Service information or press releases; and notices, announcements and other administrative pronouncements published by the Service in the Internal Revenue Bulletin. Conclusions reached in treatises, legal periodicals, legal opinions or opinions rendered by tax professionals are not authority. The authorities underlying such expressions of opinion where applicable to the facts of a particular case, however, may give rise to substantial authority for the tax treatment of an item. Notwithstanding the preceding list of authorities, an authority does not continue to be an authority to the extent it is overruled or modified, implicitly or explicitly, by a body with the power to overrule or modify the earlier authority. In the case of court decisions, for example, a district court opinion on an issue is not an authority if overruled or reversed by the United States Court of Appeals for such district. However, a Tax Court opinion is not considered to be overruled or modified by a court of appeals to which a taxpayer does not have a right of appeal, unless the Tax Court adopts the holding of the court of appeals. Similarly, a private letter ruling is not authority if revoked or if inconsistent with a subsequent proposed regulation, revenue ruling or other administrative pronouncement published in the Internal Revenue Bulletin.

(iv) *Special rules*—(A) *Written determinations.* There is substantial authority for the tax treatment of an item by a taxpayer if the treatment is supported by the conclusion of a ruling or a determination letter (as defined in §301.6110-2 (d) and (e)) issued to the taxpayer, by the conclusion of a technical advice memorandum in which the taxpayer is named, or by an affirmative statement in a revenue agent's report with respect to a prior taxable year of the taxpayer ("written determinations"). The preceding sentence does not apply, however, if—

(*1*) There was a misstatement or omission of a material fact or the facts that subsequently develop are materially different from the facts on which the written determination was based, or

(*2*) The written determination was modified or revoked after the date of issuance by—

(*i*) A notice to the taxpayer to whom the written determination was issued,

(*ii*) The enactment of legislation or ratification of a tax treaty,

(*iii*) A decision of the United States Supreme Court,

(*iv*) The issuance of temporary or final regulations, or

(*v*) The issuance of a revenue ruling, revenue procedure, or other statement published in the Internal Revenue Bulletin.

Except in the case of a written determination that is modified or revoked on account of §1.6662-4(d)(3)(iv)(A)(*1*), a written determination that is modified or revoked as described in §1.6662-4(d)(3)(iv)(A)(*2*) ceases to be authority on the date, and to the extent, it is so modified or revoked. See section 6404(f) for rules which require the Secretary to abate a penalty that is attributable to erroneous written advice furnished to a taxpayer by an officer or employee of the Internal Revenue Service.

(B) *Taxpayer's jurisdiction.* The applicability of court cases to the taxpayer by reason of the taxpayer's residence in a particular jurisdiction is not taken into account in determining whether there is substantial authority for the tax treatment of an item. Notwithstanding the preceding sentence, there is substantial authority for the tax treatment of an item if the treatment is supported by controlling precedent of a United States Court of Appeals to which the taxpayer has a right of appeal with respect to the item.

(C) *When substantial authority determined.* There is substantial authority for the tax treatment of an item if there is substantial authority at the time the return containing the item is

filed or there was substantial authority on the last day of the taxable year to which the return relates.

(v) *Substantial authority for tax returns due before January 1, 1990.* There is substantial authority for the tax treatment of an item on a return that is due (without regard to extensions) after December 31, 1982 and before January 1, 1990, if there is substantial authority for such treatment under either the provisions of paragraph (d)(3)(iii) of this section (which set forth an expanded list of authorities) or of § 1.6661-3(b)(2) (which set forth a narrower list of authorities). Under either list of authorities, authorities both for and against the position must be taken into account.

(e) *Disclosure of certain information*—(1) *Effect of adequate disclosure.* Items for which there is adequate disclosure as provided in this paragraph (e) and in paragraph (f) of this section are treated as if such items were shown properly on the return for the taxable year in computing the amount of the tax shown on the return. Thus, for purposes of section 6662(d), the tax attributable to such items is not included in the understatement for that year.

(2) *Circumstances where disclosure will not have an effect.* The rules of paragraph (e)(1) of this section do not apply where the item or position on the return—

(i) Does not have a reasonable basis (as defined in § 1.6662-3(b)(3));

(ii) Is attributable to a tax shelter (as defined in section 6662(d)(2)(C)(iii) and paragraph (g)(2) of this section); or

(iii) Is not properly substantiated, or the taxpayer failed to keep adequate books and records with respect to the item or position.

(3) *Restriction for corporations.* For purposes of paragraph (e)(2)(i) of this section, a corporation will not be treated as having a reasonable basis for its tax treatment of an item attributable to a multi-party financing transaction entered into after August 5, 1997, if the treatment does not clearly reflect the income of the corporation.

(f) *Method of making adequate disclosure*—(1) *Disclosure statement.* Disclosure is adequate with respect to an item (or group of similar items, such as amounts paid or incurred for supplies by a taxpayer engaged in business) or a position on a return if the disclosure is made on a properly completed form attached to the return or to a qualified amended return (as defined in § 1.6664-2(c)(3)) for the taxable year. In the case of an item or position other than one that is contrary to a regulation, disclosure must be made on Form 8275 (Disclosure Statement); in the case of a position contrary to a regulation, disclosure must be made on Form 8275-R (Regulation Disclosure Statement).

(2) *Disclosure on return.* The Commissioner may by annual revenue procedure (or otherwise) prescribe the circumstances under which disclosure of information on a return (or qualified amended return) in accordance with applicable forms and instructions is adequate. If the revenue procedure does not include an item, disclosure is adequate with respect to that item only if made on a properly completed Form 8275 or 8275-R, as appropriate, attached to the return for the year or to a qualified amended return.

(3) *Recurring item.* Disclosure with respect to a recurring item, such as the basis of recovery property, must be made for each taxable year in which the item is taken into account.

(4) *Carrybacks and carryovers.* Disclosure is adequate with respect to an item which is included in any loss, deduction or credit that is carried to another year only if made in connection with the return (or qualified amended return) for the taxable year in which the carryback or carryover arises (the "loss or credit year"). Disclosure is not also required in connection with the return for the taxable year in which the carryback or carryover is taken into account.

(5) *Pass-through entities.* Disclosure in the case of items attributable to a pass-through entity (pass-through items) is made with respect to the return of the entity, except as provided in this paragraph (f)(5). Thus, disclosure in the case of pass-through items must be made on a Form 8275 or 8275-R, as appropriate, attached to the return (or qualified amended return) of the entity, or on the entity's return in accordance with the revenue procedure described in paragraph (f)(2) of this section, if applicable. A taxpayer (i.e.,

partner, shareholder, beneficiary, or holder of a residual interest in a REMIC) also may make adequate disclosure with respect to a pass-through item, however, if the taxpayer files a properly completed Form 8275 or 8275-R, as appropriate, in duplicate, one copy attached to the taxpayer's return (or qualified amended return) and the other copy filed with the Internal Revenue Service Center with which the return of the entity is required to be filed. Each Form 8275 or 8275-R, as appropriate, filed by the taxpayer should relate to the pass-through items of only one entity. For purposes of this paragraph (f)(5), a pass-through entity is a partnership, S corporation (as defined in section 1361(a)(1)), estate, trust, regulated investment company (as defined in section 851(a)), real estate investment trust (as defined in section 856(a)), or real estate mortgage investment conduit ("REMIC") (as defined in section 860D(a)).

(g) *Items relating to tax shelters*—(1) *In general*—(i) *Noncorporate taxpayers.* Tax shelter items (as defined in paragraph (g)(3) of this section) of a taxpayer other than a corporation are treated for purposes of this section as if such items were shown properly on the return for a taxable year in computing the amount of tax shown on the return, and thus the tax attributable to such items is not included in the understatement for the year, if—

(A) There is substantial authority (as provided in paragraph (d) of this section) for the tax treatment of that item; and

(B) The taxpayer reasonably believed at the time the return was filed that the tax treatment of that item was more likely than not the proper treatment.

(ii) *Corporate taxpayers*—(A) *In general.* Except as provided in paragraph (g)(1)(ii)(B) of this section, all tax shelter items (as defined in paragraph (g)(3) of this section) of a corporation are taken into account in computing the amount of any understatement.

(B) *Special rule for transactions occurring prior to December 9, 1994.* The tax shelter items of a corporation arising in connection with transactions occurring prior to December 9, 1994 are treated for purposes of this section as

if such items were shown properly on the return if the requirements of paragraph (g)(1)(i) are satisfied with respect to such items.

(iii) *Disclosure irrelevant.* Disclosure made with respect to a tax shelter item of either a corporate or noncorporate taxpayer does not affect the amount of an understatement.

(iv) *Cross-reference.* See §1.6664-4(e) for certain rules regarding the availability of the reasonable cause and good faith exception to the substantial understatement penalty with respect to tax shelter items of corporations.

(2) *Tax shelter*—(i) *In general.* For purposes of section 6662(d), the term "tax shelter" means—

(A) A partnership or other entity (such as a corporation or trust),

(B) An investment plan or arrangement, or

(C) Any other plan or arrangement,

if the principal purpose of the entity, plan or arrangement, based on objective evidence, is to avoid or evade Federal income tax. The principal purpose of an entity, plan or arrangement is to avoid or evade Federal income tax if that purpose exceeds any other purpose. Typical of tax shelters are transactions structured with little or no motive for the realization of economic gain, and transactions that utilize the mismatching of income and deductions, overvalued assets or assets with values subject to substantial uncertainty, certain nonrecourse financing, financing techniques that do not conform to standard commercial business practices, or the mischaracterization of the substance of the transaction. The existence of economic substance does not of itself establish that a transaction is not a tax shelter if the transaction includes other characteristics that indicate it is a tax shelter.

(ii) *Principal purpose.* The principal purpose of an entity, plan or arrangement is not to avoid or evade Federal income tax if the entity, plan or arrangement has as its purpose the claiming of exclusions from income, accelerated deductions or other tax benefits in a manner consistent with the statute and Congressional purpose. For example, an entity, plan or arrangement does not have as its principal purpose the avoidance or evasion

of Federal income tax solely as a result of the following uses of tax benefits provided by the Internal Revenue Code: the purchasing or holding of an obligation bearing interest that is excluded from gross income under section 103; taking an accelerated depreciation allowance under section 168; taking the percentage depletion allowance under section 613 or section 613A; deducting intangible drilling and development costs as expenses under section 263(c); establishing a qualified retirement plan under sections 401-409; claiming the possession tax credit under section 936; or claiming tax benefits available by reason of an election under 992 to be taxed as a domestic international sales corporation ("DISC"), under section 927(f)(1) to be taxed as a foreign sales corporation ("FSC"), or under section 1362 to be taxed as an S corporation.

(3) *Tax shelter item.* An item of income, gain, loss, deduction or credit is a "tax shelter item" if the item is directly or indirectly attributable to the principal purpose of a tax shelter to avoid or evade Federal income tax. Thus, if a partnership is established for the principal purpose of avoiding or evading Federal income tax by acquiring and overstating the basis of property for purposes of claiming accelerated depreciation, the depreciation with respect to the property is a tax shelter item. However, a deduction claimed in connection with a separate transaction carried on by the same partnership is not a tax shelter item if the transaction does not constitute a plan or arrangement the principal purpose of which is to avoid or evade tax.

(4) *Reasonable belief*—(i) *In general.* For purposes of section 6662(d) and paragraph (g)(1)(i)(B) of this section (pertaining to tax shelter items of noncorporate taxpayers), a taxpayer is considered reasonably to believe that the tax treatment of an item is more likely than not the proper tax treatment if (without taking into account the possibility that a return will not be audited, that an issue will not be raised on audit, or that an issue will be settled)—

(A) The taxpayer analyzes the pertinent facts and authorities in the manner described in paragraph (d)(3)(ii) of this section, and in reliance upon that

analysis, reasonably concludes in good faith that there is a greater than 50-percent likelihood that the tax treatment of the item will be upheld if challenged by the Internal Revenue Service; or

(B) The taxpayer reasonably relies in good faith on the opinion of a professional tax advisor, if the opinion is based on the tax advisor's analysis of the pertinent facts and authorities in the manner described in paragraph (d)(3)(ii) of this section and unambiguously states that the tax advisor concludes that there is a greater than 50-percent likelihood that the tax treatment of the item will be upheld if challenged by the Internal Revenue Service.

(ii) *Facts and circumstances; reliance on professional tax advisor.* All facts and circumstances must be taken into account in determining whether a taxpayer satisfies the requirements of paragraph (g)(4)(i) of this section. However, in no event will a taxpayer be considered to have reasonably relied in good faith on the opinion of a professional tax advisor for purposes of paragraph (g)(4)(i)(B) of this section unless the requirements of § 1.6664-4(c)(1) are met. The fact that the requirements of § 1.6664-4(c)(1) are satisfied will not necessarily establish that the taxpayer reasonably relied on the opinion in good faith. For example, reliance may not be reasonable or in good faith if the taxpayer knew, or should have known, that the advisor lacked knowledge in the relevant aspects of Federal tax law.

(5) *Pass-through entities.* In the case of tax shelter items attributable to a pass-through entity, the actions described in paragraphs (g)(4)(i)(A) and (B) of this section, if taken by the entity, are deemed to have been taken by the taxpayer and are considered in determining whether the taxpayer reasonably believed that the tax treatment of an item was more likely than not the proper tax treatment.

[T.D. 8381, 56 FR 67499, Dec. 31, 1991; T.D. 8381, 57 FR 6165, Feb. 20, 1992, as amended by T.D. 8617, 60 FR 45665, Sept. 1, 1995; T.D. 8790, 63 FR 66435, Dec. 2, 1998]

**§ 1.6662-5 Substantial and gross valuation misstatements under chapter 1.**

(a) *In general.* If any portion of an underpayment, as defined in section 6664(a) and § 1.6664-2, of any income tax imposed under chapter 1 of subtitle A of the Code that is required to be shown on a return is attributable to a substantial valuation misstatement under chapter 1 ("substantial valuation misstatement"), there is added to the tax an amount equal to 20 percent of such portion. Section 6662(h) increases the penalty to 40 percent in the case of a gross valuation misstatement under chapter 1 ("gross valuation misstatement"). No penalty under section 6662(b)(3) is imposed, however, on a portion of an underpayment that is attributable to a substantial or gross valuation misstatement unless the aggregate of all portions of the underpayment attributable to substantial or gross valuation misstatements exceeds the applicable dollar limitation ($5,000 or $10,000), as provided in section 6662(e)(2) and paragraphs (b) and (f)(2) of this section. This penalty also does not apply to the extent that the reasonable cause and good faith exception to this penalty set forth in § 1.6664-4 applies. There is no disclosure exception to this penalty.

(b) *Dollar limitation.* No penalty may be imposed under section 6662(b)(3) for a taxable year unless the portion of the underpayment for that year that is attributable to substantial or gross valuation misstatements exceeds $5,000 ($10,000 in the case of a corporation other than an S corporation (as defined in section 1361(a)(1)) or a personal holding company (as defined in section 542)). This limitation is applied separately to each taxable year for which there is a substantial or gross valuation misstatement.

(c) *Special rules in the case of carrybacks and carryovers*—(1) *In general.* The penalty for a substantial or gross valuation misstatement applies to any portion of an underpayment for a year to which a loss, deduction or credit is carried that is attributable to a substantial or gross valuation misstatement for the year in which the carryback or carryover of the loss, deduction or credit arises (the "loss or credit year"), provided that the applicable dollar limitation set forth in section 6662(e)(2) is satisfied in the carryback or carryover year.

(2) *Transition rule for carrybacks to pre-1990 years.* The penalty under section 6662(b)(3) is imposed on any portion of an underpayment for a carryback year, the return for which is due (without regard to extensions) before January 1, 1990, if—

(i) That portion is attributable to a substantial or gross valuation misstatement for a loss or credit year; and

(ii) The return for the loss or credit year is due (without regard to extensions) after December 31, 1989.

The preceding sentence applies only if the underpayment for the carryback year exceeds the applicable dollar limitation ($5,000, or $10,000 for most corporations). See *Example 3* in paragraph (d) of this section.

(d) *Examples.* The following examples illustrate the provisions of paragraphs (b) and (c) of this section. These examples do not take into account the reasonable cause exception under § 1.6664-4.

*Example 1.* Corporation Q is a C corporation. In 1990, the first year of its existence, Q had taxable income of $200,000 without considering depreciation of a particular asset. On its calendar year 1990 return, Q overstated its basis in this asset by an amount that caused a substantial valuation misstatement. The overstated basis resulted in depreciation claimed of $350,000, which was $250,000 more than the $100,000 allowable. Thus, on its 1990 return, Q showed a loss of $150,000. In 1991, Q had taxable income of $450,000 before application of the loss carryover, and Q claimed a carryover loss deduction under section 172 of $150,000, resulting in taxable income of $300,000 for 1991. Upon audit of the 1990 return, the basis of the asset was corrected, resulting in an adjustment of $250,000. For 1990, the underpayment resulting from the $100,000 taxable income (−$150,000+$250,000) is attributable to the valuation misstatement. Assuming the underpayment resulting from the $100,000 taxable income exceeds the $10,000 limitation, the penalty will be imposed in 1990. For 1991, the elimination of the loss carryover results in additional taxable income of $150,000. The underpayment for 1991 resulting from that adjustment is also attributable to the substantial valuation misstatement on the 1990

return. Assuming the underpayment result-
ing from the $150,000 additional taxable in-
come for 1991 exceeds the $10,000 limitation,
the substantial valuation misstatement pen-
alty also will be imposed for that year.

*Example 2.* (i) Corporation T is a C corpora-
tion. In 1990, the first year of its existence, T
had a loss of $3,000,000 without considering
depreciation of its major asset. On its cal-
endar year 1990 return, T overstated its basis
in this asset in an amount that caused a sub-
stantial valuation misstatement. This over-
statement resulted in depreciation claimed
of $3,500,000, which was $2,500,000 more than
the $1,000,000 allowable. Thus, on its 1990 re-
turn, T showed a loss of $6,500,000. In 1991, T
had taxable income of $4,500,000 before appli-
cation of the carryover loss, but claimed a
carryover loss deduction under section 172 in
the amount of $4,500,000, resulting in taxable
income of zero for that year and leaving a
$2,000,000 carryover available. Upon audit of
the 1990 return, the basis of the asset was
corrected, resulting in an adjustment of
$2,500,000.

(ii) For 1990, the underpayment is still zero
(−$6,500,000+$2,500,000=−$4,000,000). Thus, the
penalty does not apply in 1990. The loss for
1990 is reduced to $4,000,000.

(iii) For 1991, there is additional taxable in-
come of $500,000 as a result of the reduction
of the carryover loss ($4,500,000 reported in-
come before carryover loss minus corrected
carryover loss of $4,000,000=$500,000). The un-
derpayment for 1991 resulting from reduction
of the carryover loss is attributable to the
valuation misstatement on the 1990 return.
Assuming the underpayment resulting from
the $500,000 additional taxable income ex-
ceeds the $10,000 limitation, the substantial
valuation misstatement penalty will be im-
posed in 1991.

*Example 3.* Corporation V is a C corpora-
tion. In 1990, V had a loss of $100,000 without
considering depreciation of a particular
asset which it had fully depreciated in ear-
lier years. V had a depreciable basis in the
asset of zero, but on its 1990 calendar year re-
turn erroneously claimed a basis in the asset
of $1,250,000 and depreciation of $250,000. V re-
ported a $350,000 loss for the year 1990, and
carried back the loss to the 1987 and 1988 tax
years. V had reported taxable income of
$300,000 in 1987 and $200,000 in 1988, before ap-
plication of the carryback. The $350,000
carryback eliminated all taxable income for
1987, and $50,000 of the taxable income for
1988. After disallowance of the $250,000 depre-
ciation deduction for 1990, V still had a loss
of $100,000. Because there is no under-
payment for 1990, no valuation misstatement
penalty is imposed for 1990. However, as a re-
sult of the 1990 depreciation adjustment, the
carryback to 1987 is reduced from $350,000 to
$100,000. After absorption of the $100,000
carryback, V has taxable income of $200,000
for 1987. This adjustment results in an under-

payment for 1987 that is attributable to the
valuation misstatement on the 1990 return.
The valuation misstatement for 1990 is a
gross valuation misstatement because the
correct adjusted basis of the depreciated
asset was zero. (See paragraph (e)(2) of this
section.) Therefore, the 40 percent penalty
rate applies to the 1987 underpayment attrib-
utable to the 1990 misstatement, provided
that this underpayment exceeds $10,000. The
adjustment also results in the elimination of
any loss carryback to 1988 resulting in an in-
crease in taxable income for 1988 of $50,000.
Assuming the underpayment resulting from
this additional $50,000 of income exceeds
$10,000, the gross valuation misstatement
penalty is imposed on the underpayment for
1988.

(e) *Definitions*—(1) *Substantial valu-
ation misstatement.* There is a substan-
tial valuation misstatement if the
value or adjusted basis of any property
claimed on a return of tax imposed
under chapter 1 is 200 percent or more
of the correct amount.

(2) *Gross valuation misstatement.* There
is a gross valuation misstatement if
the value or adjusted basis of any prop-
erty claimed on a return of tax im-
posed under chapter 1 is 400 percent or
more of the correct amount.

(3) *Property.* For purposes of this sec-
tion, the term "property" refers to
both tangible and intangible property.
Tangible property includes property
such as land, buildings, fixtures and in-
ventory. Intangible property includes
property such as goodwill, covenants
not to compete, leaseholds, patents,
contract rights, debts and choses in ac-
tion.

(f) *Multiple valuation misstatements on
a return*—(1) *Determination of whether
valuation misstatements are substantial or
gross.* The determination of whether
there is a substantial or gross valu-
ation misstatement on a return is
made on a property-by-property basis.
Assume, for example, that property A
has a value of 60 but a taxpayer claims
a value of 110, and that property B has
a value of 40 but the taxpayer claims a
value of 100. Because the claimed and
correct values are compared on a prop-
erty-by-property basis, there is a sub-
stantial valuation misstatement with
respect to property B, but not with re-
spect to property A, even though the
claimed values (210) are 200 percent or
more of the correct values (100) when
compared on an aggregate basis.

(2) *Application of dollar limitation.* For purposes of applying the dollar limitation set forth in section 6662(e)(2), the determination of the portion of an underpayment that is attributable to a substantial or gross valuation misstatement is made by aggregating all portions of the underpayment attributable to substantial or gross valuation misstatements. Assume, for example, that the value claimed for property C on a return is 250 percent of the correct value, and that that the value claimed for property D on the return is 400 percent of the correct value. Because the portions of an underpayment that are attributable to a substantial or gross valuation misstatement on a return are aggregated in applying the dollar limitation, the dollar limitation is satisfied if the portion of the underpayment that is attributable to the misstatement of the value of property C, when aggregated with the portion of the underpayment that is attributable to the misstatement of the value of property D, exceeds $5,000 ($10,000 in the case of most corporations).

(g) *Property with a value or adjusted basis of zero.* The value or adjusted basis claimed on a return of any property with a correct value or adjusted basis of zero is considered to be 400 percent or more of the correct amount. There is a gross valuation misstatement with respect to such property, therefore, and the applicable penalty rate is 40 percent.

(h) *Pass-through entities*—(1) *In general.* The determination of whether there is a substantial or gross valuation misstatement in the case of a return of a pass-through entity (as defined in §1.6662-4(f)(5)) is made at the entity level. However, the dollar limitation ($5,000 or $10,000, as the case may be) is applied at the taxpayer level (*i.e.,* with respect to the return of the shareholder, partner, beneficiary, or holder of a residual interest in a REMIC).

(2) *Example.* The rules of paragraph (h)(1) of this section may be illustrated by the following example.

*Example.* Partnership P has two partners, individuals A and B. P claims a $40,000 basis in a depreciable asset which, in fact, has a basis of $15,000. The determination that there is a substantial valuation misstatement is made solely with reference to P by com-paring the $40,000 basis claimed by P with P's correct basis of $15,000. However, the determination of whether the $5,000 threshold for application of the penalty has been reached is made separately for each partner. With respect to partner A, the penalty will apply if the portion of A's underpayment attributable to the passthrough of the depreciation deduction, when aggregated with any other portions of A's underpayment also attributable to substantial or gross valuation misstatements, exceeds $5,000 (assuming there is not reasonable cause for the misstatements (*see* §1.6664-4(c)).

(i) [Reserved]

(j) *Transactions between persons described in section 482 and net section 482 transfer price adjustments.* [Reserved]

(k) *Returns affected.* Except in the case of rules relating to transactions between persons described in section 482 and net sections 482 transfer price adjustments, the provisions of section 6662(b)(3) apply to returns due (without regard to extensions of time to file) after December 31, 1989, notwithstanding that the original substantial or gross valuation misstatement occurred on a return that was due (without regard to extensions) before January 1, 1990. Assume, for example, that a calendar year corporation claimed a deduction on its 1990 return for depreciation of an asset with a basis of X. Also assume that it had reported the same basis for computing depreciation on its returns for the preceding 5 years and that the basis shown on the return each year was 200 percent or more of the correct basis. The corporation may be subject to a penalty for substantial valuation misstatements on its 1989 and 1990 returns, even though the original misstatement occurred prior to the effective date of sections 6662(b)(3) and (e).

[T.D. 8381, 56 FR 67504, Dec. 31, 1991; T.D. 8381, 57 FR 6165, Feb. 20, 1992]

## §1.6662-5T Substantial and gross valuation misstatements under chapter 1 (temporary).

(a)–(e)(3) [Reserved]. For further information, see §1.6662-5(a) through (e)(3).

(e)(4) *Tests related to section 482*—(i) *Substantial valuation misstatement.* There is a substantial valuation misstatement if there is a misstatement described in §1.6662-6

# HEINONLINE

Citation: CFR 1039 2000



Content downloaded/printed from
HeinOnline (http://heinonline.org)
Fri Aug 22 18:12:19 2014

-- Your use of this HeinOnline PDF indicates your acceptance
  of HeinOnline's Terms and Conditions of the license
  agreement available at http://heinonline.org/HOL/License

-- The search text of this PDF is generated from
  uncorrected OCR text.

Thus, the portion of the underpayment that is not penalized is zero ($150—$150), the portion subject to a 20 percent penalty is $8,006 ($9,356—$1,350) and the portion subject to a 75 percent penalty is unchanged at $13,948.

[T.D. 8381, 56 FR 67507, Dec. 31, 1991; T.D. 8381, 57 FR 6165, Feb. 20, 1992]

§ 1.6664-4 Reasonable cause and good faith exception to section 6662 penalties.

(a) *In general.* No penalty may be imposed under section 6662 with respect to any portion of an underpayment upon a showing by the taxpayer that there was reasonable cause for, and the taxpayer acted in good faith with respect to, such portion. Rules for determining whether the reasonable cause and good faith exception applies are set forth in paragraphs (b) through (g) of this section.

(b) *Facts and circumstances taken into account*—(1) *In general.* The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. (See paragraph (e) of this section for certain rules relating to a substantial understatement penalty attributable to tax shelter items of corporations.) Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer. An isolated computational or transcriptional error generally is not inconsistent with reasonable cause and good faith. Reliance on an information return or on the advice of a professional tax advisor or an appraiser does not necessarily demonstrate reasonable cause and good faith. Similarly, reasonable cause and good faith is not necessarily indicated by reliance on facts that, unknown to the taxpayer, are incorrect. Reliance on an information return, professional advice, or other facts, however, constitutes reasonable cause and good faith if, under all the circumstances, such reliance was reasonable and the taxpayer acted in good faith. (See paragraph (c) of this section for certain rules relating to reliance on the advice of others.) For example, reliance on erroneous information (such as an error relating to the cost or adjusted basis of property, the date property was placed in service, or the amount of opening or closing inventory) inadvertently included in data compiled by the various divisions of a multidivisional corporation or in financial books and records prepared by those divisions generally indicates reasonable cause and good faith, provided the corporation employed internal controls and procedures, reasonable under the circumstances, that were designed to identify such factual errors. Reasonable cause and good faith ordinarily is not indicated by the mere fact that there is an appraisal of the value of property. Other factors to consider include the methodology and assumptions underlying the appraisal, the appraised value, the relationship between appraised value and purchase price, the circumstances under which the appraisal was obtained, and the appraiser's relationship to the taxpayer or to the activity in which the property is used. (See paragraph (g) of this section for certain rules relating to appraisals for charitable deduction property.) A taxpayer's reliance on erroneous information reported on a Form W-2, Form 1099, or other information return indicates reasonable cause and good faith, provided the taxpayer did not know or have reason to know that the information was incorrect. Generally, a taxpayer knows, or has reason to know, that the information on an information return is incorrect if such information is inconsistent with other information reported or otherwise furnished to the taxpayer, or with the taxpayer's knowledge of the transaction. This knowledge includes, for example, the taxpayer's knowledge of the terms of his employment relationship or of the rate of return on a payor's obligation.

(2) *Examples.* The following examples illustrate this paragraph (b). They do not involve tax shelter items. (See paragraph (e) of this section for certain rules relating to the substantial understatement penalty attributable to the tax shelter items of corporations.)

**Internal Revenue Service, Treasury**                    **§ 1.6664-4**

*Example 1.* A, an individual calendar year taxpayer, engages B, a professional tax advisor, to give A advice concerning the deductibility of certain state and local taxes. A provides B with full details concerning the taxes at issue. B advises A that the taxes are fully deductible. A, in preparing his own tax return, claims a deduction for the taxes. Absent other facts, and assuming the facts and circumstances surrounding B's advice and A's reliance on such advice satisfy the requirements of paragraph (c) of this section, A is considered to have demonstrated good faith by seeking the advice of a professional tax advisor, and to have shown reasonable cause for any underpayment attributable to the deduction claimed for the taxes. However, if A had sought advice from someone that A knew, or should have known, lacked knowledge in the relevant aspects of Federal tax law, or if other facts demonstrate that A failed to act reasonably or in good faith, A would not be considered to have shown reasonable cause or to have acted in good faith.

*Example 2.* C, an individual, sought advice from D, a friend who was not a tax professional, as to how C might reduce his Federal tax obligations. D advised C that, for a nominal investment in Corporation X, D had received certain tax benefits which virtually eliminated D's Federal tax liability. D also named other investors who had received similar benefits. Without further inquiry, C invested in X and claimed the benefits that he had been assured by D were due him. In this case, C did not make any good faith attempt to ascertain the correctness of what D had advised him concerning his tax matters, and is not considered to have reasonable cause for the underpayment attributable to the benefits claimed.

*Example 3.* E, an individual, worked for Company X doing odd jobs and filling in for other employees when necessary. E worked irregular hours and was paid by the hour. The amount of E's pay check differed from week to week. The Form W-2 furnished to E reflected wages for 1990 in the amount of $29,729. It did not, however, include compensation of $1,467 paid for some hours E worked. Relying on the Form W-2, E filed a return reporting wages of $29,729. E had no reason to know that the amount reported on the Form W-2 was incorrect. Under the circumstances, E is considered to have acted in good faith in relying on the Form W-2 and to have reasonable cause for the underpayment attributable to the unreported wages.

*Example 4.* H, an individual, did not enjoy preparing his tax returns and procrastinated in doing so until April 15th. On April 15th, H hurriedly gathered together his tax records and materials, prepared a return, and mailed it before midnight. The return contained numerous errors, some of which were in H's favor and some of which were not. The net result of all the adjustments, however, was

an underpayment of tax by H. Under these circumstances, H is not considered to have reasonable cause for the underpayment or to have acted in good faith in attempting to file an accurate return.

(c) *Reliance on opinion or advice*—(1) *Facts and circumstances; minimum requirements.* All facts and circumstances must be taken into account in determining whether a taxpayer has reasonably relied in good faith on advice (including the opinion of a professional tax advisor) as to the treatment of the taxpayer (or any entity, plan, or arrangement) under Federal tax law. However, in no event will a taxpayer be considered to have reasonably relied in good faith on advice unless the requirements of this paragraph (c)(1) are satisfied. The fact that these requirements are satisfied will not necessarily establish that the taxpayer reasonably relied on the advice (including the opinion of a professional tax advisor) in good faith. For example, reliance may not be reasonable or in good faith if the taxpayer knew, or should have known, that the advisor lacked knowledge in the relevant aspects of Federal tax law.

(i) *All facts and circumstances considered.* The advice must be based upon all pertinent facts and circumstances and the law as it relates to those facts and circumstances. For example, the advice must take into account the taxpayer's purposes (and the relative weight of such purposes) for entering into a transaction and for structuring a transaction in a particular manner. In addition, the requirements of this paragraph (c)(1) are not satisfied if the taxpayer fails to disclose a fact that it knows, or should know, to be relevant to the proper tax treatment of an item.

(ii) *No unreasonable assumptions.* The advice must not be based on unreasonable factual or legal assumptions (including assumptions as to future events) and must not unreasonably rely on the representations, statements, findings, or agreements of the taxpayer or any other person. For example, the advice must not be based upon a representation or assumption which the taxpayer knows, or has reason to know, is unlikely to be true, such as an inaccurate representation or assumption as to the taxpayer's purposes for entering into a transaction or

§ 1.6664-4             **26 CFR Ch. I (4-1-00 Edition)**

for structuring a transaction in a particular manner.

(2) *Advice defined.* Advice is any communication, including the opinion of a professional tax advisor, setting forth the analysis or conclusion of a person, other than the taxpayer, provided to (or for the benefit of) the taxpayer and on which the taxpayer relies, directly or indirectly, with respect to the imposition of the section 6662 accuracy-related penalty. Advice does not have to be in any particular form.

(3) *Cross-reference.* For rules applicable to advisors, see e.g., §§ 1.6694-1 through 1.6694-3 (regarding preparer penalties), 31 CFR 10.22 (regarding diligence as to accuracy), 31 CFR 10.33 (regarding tax shelter opinions), and 31 CFR 10.34 (regarding standards for advising with respect to tax return positions and for preparing or signing returns).

(d) *Pass-through items.* The determination of whether a taxpayer acted with reasonable cause and in good faith with respect to an underpayment that is related to an item reflected on the return of a pass-through entity is made on the basis of all pertinent facts and circumstances, including the taxpayer's own actions, as well as the actions of the pass-through entity.

(e) *Special rules for substantial understatement penalty attributable to tax shelter items of corporations*—(1) *In general; facts and circumstances.* The determination of whether a corporation acted with reasonable cause and in good faith in its treatment of a tax shelter item (as defined in § 1.6662-4(g)(3)) is based on all pertinent facts and circumstances. Paragraphs (e)(2), (3), and (4) of this section set forth rules that apply, in the case of a penalty attributable to a substantial understatement of income tax (within the meaning of section 6662(d)), in determining whether a corporation acted with reasonable cause and in good faith with respect to a tax shelter item.

(2) *Reasonable cause based on legal justification*—(i) *Minimum requirements.* A corporation's legal justification (as defined in paragraph (e)(2)(ii) of this section) may be taken into account, as appropriate, in establishing that the corporation acted with reasonable cause and in good faith in its treatment of a

tax shelter item only if the authority requirement of paragraph (e)(2)(i)(A) of this section and the belief requirement of paragraph (e)(2)(i)(B) of this section are satisfied (the minimum requirements). Thus, a failure to satisfy the minimum requirements will preclude a finding of reasonable cause and good faith based (in whole or in part) on the corporation's legal justification.

(A) *Authority requirement.* The authority requirement is satisfied only if there is substantial authority (within the meaning of § 1.6662-4(d)) for the tax treatment of the item.

(B) *Belief requirement.* The belief requirement is satisfied only if, based on all facts and circumstances, the corporation reasonably believed, at the time the return was filed, that the tax treatment of the item was more likely than not the proper treatment. For purposes of the preceding sentence, a corporation is considered reasonably to believe that the tax treatment of an item is more likely than not the proper tax treatment if (without taking into account the possibility that a return will not be audited, that an issue will not be raised on audit, or that an issue will be settled)—

(*1*) The corporation analyzes the pertinent facts and authorities in the manner described in § 1.6662-4(d)(3)(ii), and in reliance upon that analysis, reasonably concludes in good faith that there is a greater than 50-percent likelihood that the tax treatment of the item will be upheld if challenged by the Internal Revenue Service; or

(*2*) The corporation reasonably relies in good faith on the opinion of a professional tax advisor, if the opinion is based on the tax advisor's analysis of the pertinent facts and authorities in the manner described in § 1.6662-4(d)(3)(ii) and unambiguously states that the tax advisor concludes that there is a greater than 50-percent likelihood that the tax treatment of the item will be upheld if challenged by the Internal Revenue Service. (For this purpose, the requirements of paragraph (c) of this section must be met with respect to the opinion of a professional tax advisor.)

(ii) *Legal justification defined.* For purposes of this paragraph (e), *legal justification* includes any justification relating to the treatment or characterization under the Federal tax law of the tax shelter item or of the entity, plan, or arrangement that gave rise to the item. Thus, a taxpayer's belief (whether independently formed or based on the advice of others) as to the merits of the taxpayer's underlying position is a legal justification.

(3) *Minimum requirements not dispositive.* Satisfaction of the minimum requirements of paragraph (e)(2) of this section is an important factor to be considered in determining whether a corporate taxpayer acted with reasonable cause and in good faith, but is not necessarily dispositive. For example, depending on the circumstances, satisfaction of the minimum requirements may not be dispositive if the taxpayer's participation in the tax shelter lacked significant business purpose, if the taxpayer claimed tax benefits that are unreasonable in comparison to the taxpayer's investment in the tax shelter, or if the taxpayer agreed with the organizer or promoter of the tax shelter that the taxpayer would protect the confidentiality of the tax aspects of the structure of the tax shelter.

(4) *Other factors.* Facts and circumstances other than a corporation's legal justification may be taken into account, as appropriate, in determining whether the corporation acted with reasonable cause and in good faith with respect to a tax shelter item regardless of whether the minimum requirements of paragraph (e)(2) of this section are satisfied.

(f) *Transactions between persons described in section 482 and net section 482 transfer price adjustments.* [Reserved]

(g) *Valuation misstatements of charitable deduction property*—(1) *In general.* There may be reasonable cause and good faith with respect to a portion of an underpayment that is attributable to a substantial (or gross) valuation misstatement of charitable deduction property (as defined in paragraph (g)(2) of this section) only if—

(i) The claimed value of the property was based on a qualified appraisal (as defined in paragraph (g)(2) of this section) by a qualified appraiser (as de-

fined in paragraph (g)(2) of this section); and

(ii) In addition to obtaining a qualified appraisal, the taxpayer made a good faith investigation of the value of the contributed property.

(2) *Definitions.* For purposes of this paragraph (g):

*Charitable deduction property* means any property (other than money or publicly traded securities, as defined in §1.170A-13(c)(7)(xi)) contributed by the taxpayer in a contribution for which a deduction was claimed under section 170.

*Qualified appraisal* means a qualified appraisal as defined in §1.170A-13(c)(3).

*Qualified appraiser* means a qualified appraiser as defined in §1.170A-13(c)(5).

(3) *Special rules.* The rules of this paragraph (g) apply regardless of whether §1.170A-13 permits a taxpayer to claim a charitable contribution deduction for the property without obtaining a qualified appraisal. The rules of this paragraph (g) apply in addition to the generally applicable rules concerning reasonable cause and good faith.

[T.D. 8381, 56 FR 67508, Dec. 31, 1991; T.D. 8381, 57 FR 6166, Feb. 20, 1992, as amended by T.D. 8617, 60 FR 45666, Sept. 1, 1995; T.D. 8790, 63 FR 66435, Dec. 2, 1998]

§1.6664-4T Reasonable cause and good faith exception to section 6662 penalties.

(a)–(e) [Reserved]

(f) *Transactions between persons described in section 482 and net section 482 transfer price adjustments.* For purposes of applying the reasonable cause and good faith exception of section 6664(c) to net section 482 adjustments, the rules of §1.6662-6(d) apply. A taxpayer that does not satisfy the rules of §1.6662-6(d) for a net section 482 adjustment cannot satisfy the reasonable cause and good faith exception under section 6664(c). The rules of this section apply to underpayments subject to the transactional penalty in §1.6662-6(b). If the standards of the net section 482 penalty exclusion provisions under §1.6662-6(d) are met with respect to such underpayments, then the taxpayer will be considered to have acted

# HEINONLINE

Citation: CFR 1068 2000



Content downloaded/printed from
HeinOnline (http://heinonline.org)
Fri Aug 22 18:15:53 2014

-- Your use of this HeinOnline PDF indicates your acceptance
   of HeinOnline's Terms and Conditions of the license
   agreement available at http://heinonline.org/HOL/License

-- The search text of this PDF is generated from
   uncorrected OCR text.

Case3:04-cv-04264-RS   Document249   Filed08/26/14   Page28 of 37
COPY TO JUDGE

(A) such tax was incurred by the debtor before the earlier of the order for relief or (in the involuntary case) the appointment of a trustee, and

(B)(i) the petition was filed before the due date prescribed by law (including extensions) for filing a return of such tax, or

(ii) the date for making the addition to the tax occurs on or after the day on which the petition was filed.

**(b) Exception for collected taxes**

Subsection (a) shall not apply to any liability for an addition to the tax which arises from the failure to pay or deposit a tax withheld or collected from others and required to be paid to the United States.

(Added Pub. L. 96–589, § 6(e)(1), Dec. 24, 1980, 94 Stat. 3408.)

PRIOR PROVISIONS

A prior section 6658, act Aug. 16, 1954, ch. 736, 68A Stat. 826, authorized inclusion as part of the tax a 25 percent penalty in cases of violations or attempted violations of section 6851 of this title, prior to repeal by Pub. L. 96–167, § 6(a), Dec. 29, 1979, 93 Stat. 1276.

EFFECTIVE DATE

Section effective Oct. 1, 1979, but not applicable to proceedings under Title 11, Bankruptcy, commenced before Oct. 1, 1979, see section 7(e) of Pub. L. 96–589, set out as an Effective Date of 1980 Amendment note under section 108 of this title.

**[§§ 6659 to 6661. Repealed. Pub. L. 101–239, title VII, § 7721(c)(2), Dec. 19, 1989, 103 Stat. 2399]**

Section 6659, added Pub. L. 97–34, title VII, § 722(a)(1), Aug. 13, 1981, 95 Stat. 341; amended Pub. L. 97–448, title I, § 107(a)(1), (2), Jan. 12, 1983, 96 Stat. 2391; Pub. L. 98–369, div. A, title I, § 155(c)(1), title VII, § 721(x)(4), July 18, 1984, 98 Stat. 693, 971, related to additions to tax in case of valuation overstatements for purposes of the income tax.

A prior section 6659 was renumbered section 6662 of this title.

Section 6659A, added Pub. L. 99–514, title XI, § 1138(a), Oct. 22, 1986, 100 Stat. 2486, related to additions to tax in case of overstatements of pension liabilities.

Section 6660, added Pub. L. 98–369, div. A, title I, § 155(c)(2)(A), July 18, 1984, 98 Stat. 694; amended Pub. L. 99–514, title XVIII, §§ 1811(d), 1899A(57), Oct. 22, 1986, 100 Stat. 2833, 2961, related to additions to tax in case of valuation understatements for purposes of estate or gift taxes.

A prior section 6660 was renumbered section 6662 of this title.

Section 6661, added Pub. L. 97–34, title III, § 323(a), Sept. 3, 1982, 96 Stat. 613; amended Pub. L. 97–354, § 5(a)(42), Oct. 19, 1982, 96 Stat. 1697; Pub. L. 98–369, div. A, title VII, § 714(h)(3), July 18, 1984, 98 Stat. 962; Pub. L. 99–509, title VIII, § 8002(a), (c), Oct. 21, 1986, 100 Stat. 1951; Pub. L. 99–514, title XV, § 1504(a), Oct. 22, 1986, 100 Stat. 2743, related to substantial understatements of liability.

EFFECTIVE DATE OF REPEAL

Repeal applicable to returns the due date for which (determined without regard to extensions) is after Dec. 31, 1989, see section 7721(d) of Pub. L. 101–239, set out as an Effective Date of 1989 Amendment note under section 461 of this title.

**PART II—ACCURACY-RELATED AND FRAUD PENALTIES**

Sec.
6662.        Imposition of accuracy-related penalty.

Sec.
6663.        Imposition of fraud penalty.
6664.        Definitions and special rules.

AMENDMENTS

1989—Pub. L. 101–239, title VII, § 7721(a), Dec. 19, 1989, 103 Stat. 2395, added part heading and analysis of sections.

PART REFERRED TO IN OTHER SECTIONS

This part is referred to in sections 5761, 6013, 6034A, 6037, 6222, 6241, 6242, 6601, 6672, 7519 of this title.

**§ 6662. Imposition of accuracy-related penalty**

**(a) Imposition of penalty**

If this section applies to any portion of an underpayment of tax required to be shown on a return, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which this section applies.

**(b) Portion of underpayment to which section applies**

This section shall apply to the portion of any underpayment which is attributable to 1 or more of the following:

(1) Negligence or disregard of rules or regulations.

(2) Any substantial understatement of income tax.

(3) Any substantial valuation misstatement under chapter 1.

(4) Any substantial overstatement of pension liabilities.

(5) Any substantial estate or gift tax valuation understatement.

This section shall not apply to any portion of an underpayment on which a penalty is imposed under section 6663.

**(c) Negligence**

For purposes of this section, the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term "disregard" includes any careless, reckless, or intentional disregard.

**(d) Substantial understatement of income tax**

**(1) Substantial understatement**

**(A) In general**

For purposes of this section, there is a substantial understatement of income tax for any taxable year if the amount of the understatement for the taxable year exceeds the greater of—

(i) 10 percent of the tax required to be shown on the return for the taxable year, or

(ii) $5,000.

**(B) Special rule for corporations**

In the case of a corporation other than an S corporation or a personal holding company (as defined in section 542), paragraph (1) shall be applied by substituting "$10,000" for "$5,000".

**(2) Understatement**

**(A) In general**

For purposes of paragraph (1), the term "understatement" means the excess of—

(i) the amount of the tax required to be shown on the return for the taxable year, over

(ii) the amount of the tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)).

**(B) Reduction for understatement due to position of taxpayer or disclosed item**

The amount of the understatement under subparagraph (A) shall be reduced by that portion of the understatement which is attributable to—

(i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or

(ii) any item if—

(I) the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return, and

(II) there is a reasonable basis for the tax treatment of such item by the taxpayer.

For purposes of clause (ii)(II), in no event shall a corporation be treated as having a reasonable basis for its tax treatment of an item attributable to a multiple-party financing transaction if such treatment does not clearly reflect the income of the corporation.

**(C) Special rules in cases involving tax shelters**

**(i) In general**

In the case of any item of a taxpayer other than a corporation which is attributable to a tax shelter—

(I) subparagraph (B)(ii) shall not apply, and

(II) subparagraph (B)(i) shall not apply unless (in addition to meeting the requirements of such subparagraph) the taxpayer reasonably believed that the tax treatment of such item by the taxpayer was more likely than not the proper treatment.

**(ii) Subparagraph (B) not to apply to corporations**

Subparagraph (B) shall not apply to any item of a corporation which is attributable to a tax shelter.

**(iii) Tax shelter**

For purposes of this subparagraph, the term "tax shelter" means—

(I) a partnership or other entity,

(II) any investment plan or arrangement, or

(III) any other plan or arrangement,

if a significant purpose of such partnership, entity, plan, or arrangement is the avoidance or evasion of Federal income tax.

**(D) Secretarial list**

The Secretary shall prescribe (and revise not less frequently than annually) a list of positions—

(i) for which the Secretary believes there is not substantial authority, and

(ii) which affect a significant number of taxpayers.

Such list (and any revision thereof) shall be published in the Federal Register.

**(e) Substantial valuation misstatement under chapter 1**

**(1) In general**

For purposes of this section, there is a substantial valuation misstatement under chapter 1 if—

(A) the value of any property (or the adjusted basis of any property) claimed on any return of tax imposed by chapter 1 is 200 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be), or

(B)(i) the price for any property or services (or for the use of property) claimed on any such return in connection with any transaction between persons described in section 482 is 200 percent or more (or 50 percent or less) of the amount determined under section 482 to be the correct amount of such price, or

(ii) the net section 482 transfer price adjustment for the taxable year exceeds the lesser of $5,000,000 or 10 percent of the taxpayer's gross receipts.

**(2) Limitation**

No penalty shall be imposed by reason of subsection (b)(3) unless the portion of the underpayment for the taxable year attributable to substantial valuation misstatements under chapter 1 exceeds $5,000 ($10,000 in the case of a corporation other than an S corporation or a personal holding company (as defined in section 542)).

**(3) Net section 482 transfer price adjustment**

For purposes of this subsection—

**(A) In general**

The term "net section 482 transfer price adjustment" means, with respect to any taxable year, the net increase in taxable income for the taxable year (determined without regard to any amount carried to such taxable year from another taxable year) resulting from adjustments under section 482 in the price for any property or services (or for the use of property).

**(B) Certain adjustments excluded in determining threshold**

For purposes of determining whether the threshold requirements of paragraph (1)(B)(ii) are met, the following shall be excluded:

(i) Any portion of the net increase in taxable income referred to in subparagraph (A) which is attributable to any redetermination of a price if—

(I) it is established that the taxpayer determined such price in accordance with a specific pricing method set forth in the regulations prescribed under section 482 and that the taxpayer's use of such method was reasonable,

(II) the taxpayer has documentation (which was in existence as of the time of filing the return) which sets forth the determination of such price in accordance

with such a method and which establishes that the use of such method was reasonable, and

(III) the taxpayer provides such documentation to the Secretary within 30 days of a request for such documentation.

(ii) Any portion of the net increase in taxable income referred to in subparagraph (A) which is attributable to a redetermination of price where such price was not determined in accordance with such a specific pricing method if—

(I) the taxpayer establishes that none of such pricing methods was likely to result in a price that would clearly reflect income, the taxpayer used another pricing method to determine such price, and such other pricing method was likely to result in a price that would clearly reflect income,

(II) the taxpayer has documentation (which was in existence as of the time of filing the return) which sets forth the determination of such price in accordance with such other method and which establishes that the requirements of subclause (I) were satisfied, and

(III) the taxpayer provides such documentation to the Secretary within 30 days of request for such documentation.

(iii) Any portion of such net increase which is attributable to any transaction solely between foreign corporations unless, in the case of any such corporations, the treatment of such transaction affects the determination of income from sources within the United States or taxable income effectively connected with the conduct of a trade or business within the United States.

(C) **Special rule**

If the regular tax (as defined in section 55(c)) imposed by chapter 1 on the taxpayer is determined by reference to an amount other than taxable income, such amount shall be treated as the taxable income of such taxpayer for purposes of this paragraph.

(D) **Coordination with reasonable cause exception**

For purposes of section 6664(c) the taxpayer shall not be treated as having reasonable cause for any portion of an underpayment attributable to a net section 482 transfer price adjustment unless such taxpayer meets the requirements of clause (i), (ii), or (iii) of subparagraph (B) with respect to such portion.

(f) **Substantial overstatement of pension liabilities**

(1) **In general**

For purposes of this section, there is a substantial overstatement of pension liabilities if the actuarial determination of the liabilities taken into account for purposes of computing the deduction under paragraph (1) or (2) of section 404(a) is 200 percent or more of the amount determined to be the correct amount of such liabilities.

(2) **Limitation**

No penalty shall be imposed by reason of subsection (b)(4) unless the portion of the underpayment for the taxable year attributable to substantial overstatements of pension liabilities exceeds $1,000.

(g) **Substantial estate or gift tax valuation understatement**

(1) **In general**

For purposes of this section, there is a substantial estate or gift tax valuation understatement if the value of any property claimed on any return of tax imposed by subtitle B is 50 percent or less of the amount determined to be the correct amount of such valuation.

(2) **Limitation**

No penalty shall be imposed by reason of subsection (b)(5) unless the portion of the underpayment attributable to substantial estate or gift tax valuation understatements for the taxable period (or, in the case of the tax imposed by chapter 11, with respect to the estate of the decedent) exceeds $5,000.

(h) **Increase in penalty in case of gross valuation misstatements**

(1) **In general**

To the extent that a portion of the underpayment to which this section applies is attributable to one or more gross valuation misstatements, subsection (a) shall be applied with respect to such portion by substituting "40 percent" for "20 percent".

(2) **Gross valuation misstatements**

The term "gross valuation misstatements" means—

(A) any substantial valuation misstatement under chapter 1 as determined under subsection (e) by substituting—

(i) "400 percent" for "200 percent" each place it appears,

(ii) "25 percent" for "50 percent", and

(iii) in paragraph (1)(B)(ii)—

(I) "$20,000,000" for "$5,000,000", and

(II) "20 percent" for "10 percent".

(B) any substantial overstatement of pension liabilities as determined under subsection (f) by substituting "400 percent" for "200 percent", and

(C) any substantial estate or gift tax valuation understatement as determined under subsection (g) by substituting "25 percent" for "50 percent".

(Added Pub. L. 101–239, title VII, § 7721(a), Dec. 19, 1989, 103 Stat. 2395; amended Pub. L. 101–508, title XI, § 11312(a), (b), Nov. 5, 1990, 104 Stat. 1388–454, 1388–455; Pub. L. 103–66, title XIII, §§ 13236(a)–(d), 13251(a), Aug. 10, 1993, 107 Stat. 505, 506, 531; Pub. L. 103–465, title VII, § 744(a), (b), Dec. 8, 1994, 108 Stat. 5011; Pub. L. 105–34, title X, § 1028(c), Aug. 5, 1997, 111 Stat. 928.)

PRIOR PROVISIONS

A prior section 6662, acts Aug. 16, 1954, ch. 736, 68A Stat. 827, § 6659; May 14, 1960, Pub. L. 86–470, § 1, 74 Stat.

Case3:04-cv-04264-RS   Document249   Filed08/26/14   Page30 of 37

132; Dec. 30, 1969, Pub. L. 91–172, title I, § 101(j)(51), 83 Stat. 531; Sept. 2, 1974, Pub. L. 93–406, title II, § 1016(a)(19), 88 Stat. 931; renumbered § 6660, Aug. 13, 1981, Pub. L. 97–34, title VII, § 722(a)(1), 95 Stat. 341; renumbered § 6662, Sept. 3, 1982, Pub. L. 97–248, title III, § 323(a), 96 Stat. 613, directed that additions be treated as tax and set procedure for assessing certain additions to tax, prior to repeal by Pub. L. 101–239, title VII, § 7721(a), Dec. 19, 1989, 103 Stat. 2395, applicable to returns the due date for which (determined without regard to extensions) is after Dec. 31, 1989. See section 6665 of this title.

#### Amendments

1997—Subsec. (d)(2)(B). Pub. L. 105–34, § 1028(c)(1), inserted concluding provisions.

Subsec. (d)(2)(C)(iii). Pub. L. 105–34, § 1028(c)(2), substituted "a significant purpose" for "the principal purpose" in concluding provisions.

1994—Subsec. (d)(2)(C)(i). Pub. L. 103–465, § 744(b)(1), substituted "In the case of any item of a taxpayer other than a corporation which is" for "In the case of any item" in introductory provisions.

Subsec. (d)(2)(C)(ii). Pub. L. 103–465, § 744(a), added cl. (ii). Former cl. (ii) redesignated (iii).

Subsec. (d)(2)(C)(iii). Pub. L. 103–465, § 744(a), (b)(2), redesignated cl. (ii) as (iii) and substituted "this subparagraph" for "clause (i)" in introductory provisions.

1993—Subsec. (d)(2)(B)(ii). Pub. L. 103–66, § 13251(a), amended cl. (ii) generally. Prior to amendment, cl. (ii) read as follows: "any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return."

Subsec. (e)(1)(B)(ii). Pub. L. 103–66, § 13236(a), amended cl. (ii) generally. Prior to amendment, cl. (ii) read as follows: "the net section 482 transfer price adjustment for the taxable year exceeds $10,000,000."

Subsec. (e)(3)(B). Pub. L. 103–66, § 13236(b), amended heading and text of subpar. (B) generally. Prior to amendment, text read as follows: "For purposes of determining whether the $10,000,000 threshold requirement of paragraph (1)(B)(ii) is met, there shall be excluded—

"(i) any portion of the net increase in taxable income referred to in subparagraph (A) which is attributable to any redetermination of a price if it is shown that there was a reasonable cause for the taxpayer's determination of such price and that the taxpayer acted in good faith with respect to such price, and

"(ii) any portion of such net increase which is attributable to any transaction solely between foreign corporations unless, in the case of any of such corporations, the treatment of such transaction affects the determination of income from sources within the United States or taxable income effectively connected with the conduct of a trade or business within the United States."

Subsec. (e)(3)(D). Pub. L. 103–66, § 13236(c), added subpar. (D).

Subsec. (h)(2)(A)(iii). Pub. L. 103–66, § 13236(d), amended cl. (iii) generally. Prior to amendment, cl. (iii) read as follows: " '$20,000,000' for '$10,000,000',".

1990—Subsec. (b)(3). Pub. L. 101–508, § 11312(b)(1), amended par. (3) generally, substituting "misstatement" for "overstatement".

Subsec. (e). Pub. L. 101–508, § 11312(a), substituted "misstatement" for "overstatement" in heading and amended text generally. Prior to amendment, text read as follows:

"(1) In General.—For purposes of this section, there is a substantial valuation overstatement under chapter 1 if the value of any property (or the adjusted basis of any property) claimed on any return of tax imposed by chapter 1 is 200 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be).

"(2) Limitation.—No penalty shall be imposed by reason of subsection (b)(3) unless the portion of the underpayment for the taxable year attributable to substan-

tial valuation overstatements under chapter 1 exceeds $5,000 ($10,000 in the case of a corporation other than an S corporation or a personal holding company (as defined in section 542))."

Subsec. (h)(2)(A). Pub. L. 101–508, § 11312(b)(2), amended subpar. (A) generally. Prior to amendment, subpar. (A) read as follows: "any substantial valuation overstatement under chapter 1 as determined under subsection (e) by substituting '400 percent' for '200 percent',".

#### Effective Date of 1997 Amendment

Amendment by Pub. L. 105–34 applicable to items with respect to transactions entered into after Aug. 5, 1997, see section 1028(e)(2) of Pub. L. 105–34, set out as a note under section 6111 of this title.

#### Effective Date of 1994 Amendment

Section 744(c) of Pub. L. 103–465 provided that: "The amendments made by this section [amending this section] shall apply to items related to transactions occurring after the date of the enactment of this Act [Dec. 8, 1994]."

#### Effective Date of 1993 Amendment

Section 13236(e) of Pub. L. 103–66 provided that: "The amendments made by this section [amending this section] shall apply to taxable years beginning after December 31, 1993."

Section 13251(b) of Pub. L. 103–66 provided that: "The amendment made by this section [amending this section] shall apply to returns the due dates for which (determined without regard to extensions) are after December 31, 1993."

#### Effective Date of 1990 Amendment

Section 11312(c) of Pub. L. 101–508 provided that: "The amendments made by this section [amending this section] shall apply to taxable years ending after the date of the enactment of this Act [Nov. 5, 1990]."

#### Effective Date

Part applicable to returns the due date for which (determined without regard to extensions) is after Dec. 31, 1989, see section 7721(d) of Pub. L. 101–239, set out as an Effective Date of 1989 Amendment note under section 461 of this title.

#### Section Referred to in Other Sections

This section is referred to in sections 461, 1274, 6015, 6694, 7525 of this title.

### § 6663. Imposition of fraud penalty

#### (a) Imposition of penalty

If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud.

#### (b) Determination of portion attributable to fraud

If the Secretary establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud.

#### (c) Special rule for joint returns

In the case of a joint return, this section shall not apply with respect to a spouse unless some part of the underpayment is due to the fraud of such spouse.

(Added Pub. L. 101-239, title VII, § 7721(a), Dec. 19, 1989, 103 Stat. 2397.)

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in section 6662 of this title.

## § 6664. Definitions and special rules

### (a) Underpayment

For purposes of this part, the term "underpayment" means the amount by which any tax imposed by this title exceeds the excess of—

(1) the sum of—

(A) the amount shown as the tax by the taxpayer on his return, plus

(B) amounts not so shown previously assessed (or collected without assessment), over

(2) the amount of rebates made.

For purposes of paragraph (2), the term "rebate" means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed was less than the excess of the amount specified in paragraph (1) over the rebates previously made.

### (b) Penalties applicable only where return filed

The penalties provided in this part shall apply only in cases where a return of tax is filed (other than a return prepared by the Secretary under the authority of section 6020(b)).

### (c) Reasonable cause exception

#### (1) In general

No penalty shall be imposed under this part with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.

#### (2) Special rule for certain valuation overstatements

In the case of any underpayment attributable to a substantial or gross valuation overstatement under chapter 1 with respect to charitable deduction property, paragraph (1) shall not apply unless—

(A) the claimed value of the property was based on a qualified appraisal made by a qualified appraiser, and

(B) in addition to obtaining such appraisal, the taxpayer made a good faith investigation of the value of the contributed property.

#### (3) Definitions

For purposes of this subsection—

##### (A) Charitable deduction property

The term "charitable deduction property" means any property contributed by the taxpayer in a contribution for which a deduction was claimed under section 170. For purposes of paragraph (2), such term shall not include any securities for which (as of the date of the contribution) market quotations are readily available on an established securities market.

##### (B) Qualified appraiser

The term "qualified appraiser" means any appraiser meeting the requirements of the regulations prescribed under section 170(a)(1).

##### (C) Qualified appraisal

The term "qualified appraisal" means any appraisal meeting the requirements of the regulations prescribed under section 170(a)(1).

(Added Pub. L. 101-239, title VII, § 7721(a), Dec. 19, 1989, 103 Stat. 2398.)

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in section 6662 of this title.

## PART III—APPLICABLE RULES

Sec.
6665.    Applicable rules.

AMENDMENTS

1989—Pub. L. 101-239, title VII, § 7721(a), Dec. 19, 1989, 103 Stat. 2398, added part heading and analysis.

## § 6665. Applicable rules

### (a) Additions treated as tax

Except as otherwise provided in this title—

(1) the additions to the tax, additional amounts, and penalties provided by this chapter shall be paid upon notice and demand and shall be assessed, collected, and paid in the same manner as taxes; and

(2) any reference in this title to "tax" imposed by this title shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by this chapter.

### (b) Procedure for assessing certain additions to tax

For purposes of subchapter B of chapter 63 relating to deficiency procedures for income, estate, gift, and certain excise taxes), subsection (a) shall not apply to any addition to tax under section 6651, 6654, or 6655; except that it shall apply—

(1) in the case of an addition described in section 6651, to that portion of such addition which is attributable to a deficiency in tax described in section 6211; or

(2) to an addition described in section 6654 or 6655, if no return is filed for the taxable year.

(Added Pub. L. 101-239, title VII, § 7721(a), Dec. 19, 1989, 103 Stat. 2399.)

EFFECTIVE DATE

Section applicable to returns the due date for which (determined without regard to extensions) is after Dec. 31, 1989, see section 7721(d) of Pub. L. 101-239, set out as an Effective Date of 1989 Amendment note under section 461 of this title.

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 5134, 5684, 5761 of this title.

## Subchapter B—Assessable Penalties

Part
I.       General provisions.
II.      Failure to comply with certain information reporting requirements.

AMENDMENTS

1989—Pub. L. 101-239, title VII, § 7711(b)(5), Dec. 19, 1989, 103 Stat. 2393, substituted "Failure to comply with

# HEINONLINE

Citation: v.15 Title 26 sec. 1001-7804 1271 2000



Content downloaded/printed from
HeinOnline (http://heinonline.org)
Fri Aug 22 18:22:18 2014

-- Your use of this HeinOnline PDF indicates your acceptance
  of HeinOnline's Terms and Conditions of the license
  agreement available at http://heinonline.org/HOL/License

-- The search text of this PDF is generated from
  uncorrected OCR text.

1984—Subsec. (f)(5). Pub. L. 98–620 struck out provision that the Court of Appeals had to expedite any review of such decision in every way possible.

1982—Subsec. (i)(1). Pub. L. 97–164 substituted "United States Claims Court" for "Court of Claims".

### EFFECTIVE DATE OF 2000 AMENDMENT

Pub. L. 106–554, §1(a)(7) [title III, §304(d)], Dec. 21, 2000, 114 Stat. 2763, 2763A–634, provided that: "The amendments made by this section [enacting section 6105 of this title and amending this section and section 6103 of this title] shall take effect on the date of the enactment of this Act [Dec. 21, 2000]."

Amendment by section 1(a)(7) [title III, §313(e)] of Pub. L. 106–554 effective as if included in the provisions of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105–206, to which such amendment relates, see section 1(a)(7) [title III, §313(f)] of Pub. L. 106–554, set out as a note under section 6015 of this title.

### EFFECTIVE DATE OF 1998 AMENDMENT

Pub. L. 105–206, title III, §3509(d), July 22, 1998, 112 Stat. 774, provided that:

"(1) IN GENERAL.—Except as otherwise provided in this subsection, the amendments made by this section [amending this section] shall apply to any Chief Counsel advice issued more than 90 days after the date of the enactment of this Act [July 22, 1998].

"(2) TRANSITION RULES.—The amendments made by this section shall apply to any Chief Counsel advice issued after December 31, 1985, and before the 91st day after the date of the enactment of this Act [July 22, 1998] by the offices of the associate chief counsel for domestic, employee benefits and exempt organizations, and international, except that any such Chief Counsel advice shall be treated as made available on a timely basis if such advice is made available for public inspection not later than the following dates:

"(A) One year after the date of the enactment of this Act [July 22, 1998], in the case of all litigation guideline memoranda, service center advice, tax litigation bulletins, criminal tax bulletins, and general litigation bulletins.

"(B) Eighteen months after such date of enactment, in the case of field service advice and technical assistance to the field issued on or after January 1, 1994.

"(C) Three years after such date of enactment, in the case of field service advice and technical assistance to the field issued on or after January 1, 1992, and before January 1, 1994.

"(D) Six years after such date of enactment, in the case of any other Chief Counsel advice issued after December 31, 1985.

"(3) DOCUMENTS TREATED AS CHIEF COUNSEL ADVICE.—If the Secretary of the Treasury by regulation provides pursuant to section 6110(i)(2) of the Internal Revenue Code of 1986, as added by this section, that any additional advice or instruction issued by the Office of Chief Counsel shall be treated as Chief Counsel advice, such additional advice or instruction shall be made available for public inspection pursuant to section 6110 of such Code, as amended by this section, only in accordance with the effective date set forth in such regulation.

"(4) CHIEF COUNSEL ADVICE TO BE AVAILABLE ELECTRONICALLY.—The Internal Revenue Service shall make any Chief Counsel advice issued more than 90 days after the date of the enactment of this Act [July 22, 1998] and made available for public inspection pursuant to section 6110 of such Code, as amended by this section, also available by computer telecommunications within 1 year after issuance."

### EFFECTIVE DATE OF 1992 AMENDMENT

Amendment by Pub. L. 102–572 effective Oct. 29, 1992, see section 911 of Pub. L. 102–572, set out as a note under section 171 of Title 28, Judiciary and Judicial Procedure.

### EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–620 not applicable to cases pending on Nov. 8, 1984, see section 403 of Pub. L. 98–620, set out as an Effective Date note under section 1657 of Title 28, Judiciary and Judicial Procedure.

### EFFECTIVE DATE OF 1982 AMENDMENT

Amendment by Pub. L. 97–164 effective Oct. 1, 1982, see section 402 of Pub. L. 97–164, set out as a note under section 171 of Title 28, Judiciary and Judicial Procedure.

### EFFECTIVE DATE

Section 1201(e) of Pub. L. 94–455 provided that: "Except as otherwise provided in this section [enacting this section and provisions set out below], the amendments made by this section shall take effect on November 1, 1976."

### PENDING REQUESTS

Section 1201(b) of Pub. L. 94–455 provided that: "Any written determination or background file document which is the subject of a judicial proceeding pursuant to section 552 of title 5, United States Code, commenced before January 1, 1976, shall not be treated as a written determination subject to subsection (h)(1) [subsec. (h)(1) of this section], but shall be available to the complainant along with the background file document, if requested, as soon as practicable after July 1, 1976."

### SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 6103, 7430, 7809 of this title.

## §6111. Registration of tax shelters

### (a) Registration

#### (1) In general

Any tax shelter organizer shall register the tax shelter with the Secretary (in such form and in such manner as the Secretary may prescribe) not later than the day on which the first offering for sale of interests in such tax shelter occurs.

#### (2) Information included in registration

Any registration under paragraph (1) shall include—

(A) information identifying and describing the tax shelter,

(B) information describing the tax benefits of the tax shelter represented (or to be represented) to investors, and

(C) such other information as the Secretary may prescribe.

### (b) Furnishing of tax shelter identification number; inclusion on return

#### (1) Sellers, etc.

Any person who sells (or otherwise transfers) an interest in a tax shelter shall (at such times and in such manner as the Secretary shall prescribe) furnish to each investor who purchases (or otherwise acquires) an interest in such tax shelter from such person the identification number assigned by the Secretary to such tax shelter.

#### (2) Inclusion of number on return

Any person claiming any deduction, credit, or other tax benefit by reason of a tax shelter shall include (in such manner as the Secretary may prescribe) on the return of tax on which such deduction, credit, or other benefit is

Case3:04-cv-04264-RS Document249 Filed08/26/14 Page35 of 37

claimed the identification number assigned by the Secretary to such tax shelter.

**(c) Tax shelter**

For purposes of this section—

**(1) In general**

The term "tax shelter" means any investment—

(A) with respect to which any person could reasonably infer from the representations made, or to be made, in connection with the offering for sale of interests in the investment that the tax shelter ratio for any investor as of the close of any of the first 5 years ending after the date on which such investment is offered for sale may be greater than 2 to 1, and

(B) which is—

(i) required to be registered under a Federal or State law regulating securities,

(ii) sold pursuant to an exemption from registration requiring the filing of a notice with a Federal or State agency regulating the offering or sale of securities, or

(iii) a substantial investment.

**(2) Tax shelter ratio defined**

For purposes of this subsection, the term "tax shelter ratio" means, with respect to any year, the ratio which—

(A) the aggregate amount of the deductions and 350 percent of the credits which are represented to be potentially allowable to any investor under subtitle A for all periods up to (and including) the close of such year, bears to

(B) the investment base as of the close of such year.

**(3) Investment base**

**(A) In general**

Except as provided in this paragraph, the term "investment base" means, with respect to any year, the amount of money and the adjusted basis of other property (reduced by any liability to which such other property is subject) contributed by the investor as of the close of such year.

**(B) Certain borrowed amounts excluded**

For purposes of subparagraph (A), there shall not be taken into account any amount borrowed from any person—

(i) who participated in the organization, sale, or management of the investment, or

(ii) who is a related person (as defined in section 465(b)(3)(C)) to any person described in clause (i),

unless such amount is unconditionally required to be repaid by the investor before the close of the year for which the determination is being made.

**(C) Certain other amounts included or excluded**

**(i) Amounts held in cash equivalents, etc.**

No amount shall be taken into account under subparagraph (A) which is to be held in cash equivalent or marketable securities.

**(ii) Amounts included or excluded by Secretary**

The Secretary may by regulation—

(I) exclude from the investment base any amount described in subparagraph (A), or

(II) include in the investment base any amount not described in subparagraph (A),

if the Secretary determines that such exclusion or inclusion is necessary to carry out the purposes of this section.

**(4) Substantial investment**

An investment is a substantial investment if—

(A) the aggregate amount which may be offered for sale exceeds $250,000, and

(B) there are expected to be 5 or more investors.

**(d) Certain confidential arrangements treated as tax shelters**

**(1) In general**

For purposes of this section, the term "tax shelter" includes any entity, plan, arrangement, or transaction—

(A) a significant purpose of the structure of which is the avoidance or evasion of Federal income tax for a direct or indirect participant which is a corporation,

(B) which is offered to any potential participant under conditions of confidentiality, and

(C) for which the tax shelter promoters may receive fees in excess of $100,000 in the aggregate.

**(2) Conditions of confidentiality**

For purposes of paragraph (1)(B), an offer is under conditions of confidentiality if—

(A) the potential participant to whom the offer is made (or any other person acting on behalf of such participant) has an understanding or agreement with or for the benefit of any promoter of the tax shelter that such participant (or such other person) will limit disclosure of the tax shelter or any significant tax features of the tax shelter, or

(B) any promoter of the tax shelter—

(i) claims, knows, or has reason to know,

(ii) knows or has reason to know that any other person (other than the potential participant) claims, or

(iii) causes another person to claim,

that the tax shelter (or any aspect thereof) is proprietary to any person other than the potential participant or is otherwise protected from disclosure to or use by others.

For purposes of this subsection, the term "promoter" means any person or any related person (within the meaning of section 267 or 707) who participates in the organization, management, or sale of the tax shelter.

**(3) Persons other than promoter required to register in certain cases**

**(A) In general**

If—

(i) the requirements of subsection (a) are not met with respect to any tax shelter (as defined in paragraph (1)) by any tax shelter promoter, and

(ii) no tax shelter promoter is a United States person,

then each United States person who discussed participation in such shelter shall register such shelter under subsection (a).

**(B) Exception**

Subparagraph (A) shall not apply to a United States person who discussed participation in a tax shelter if—

(i) such person notified the promoter in writing (not later than the close of the 90th day after the day on which such discussions began) that such person would not participate in such shelter, and

(ii) such person does not participate in such shelter.

**(4) Offer to participate treated as offer for sale**

For purposes of subsections (a) and (b), an offer to participate in a tax shelter (as defined in paragraph (1)) shall be treated as an offer for sale.

**(e) Other definitions**

For purposes of this section—

**(1) Tax shelter organizer**

The term "tax shelter organizer" means—

(A) the person principally responsible for organizing the tax shelter,

(B) if the requirements of subsection (a) are not met by a person described in subparagraph (A) at the time prescribed therefor, any other person who participated in the organization of the tax shelter, and

(C) if the requirements of subsection (a) are not met by a person described in subparagraph (A) or (B) at the time prescribed therefor, any person participating in the sale or management of the investment at a time when the tax shelter was not registered under subsection (a).

**(2) Year**

The term "year" means—

(A) the taxable year of the tax shelter, or

(B) if the tax shelter has no taxable year, the calendar year.

**(f) Regulations**

The Secretary may prescribe regulations which provide—

(1) rules for the aggregation of similar investments offered by the same person or persons for purposes of applying subsection (c)(4),

(2) that only 1 person shall be required to meet the requirements of subsection (a) in cases in which 2 or more persons would otherwise be required to meet such requirements,

(3) exemptions from the requirements of this section, and

(4) such rules as may be necessary or appropriate to carry out the purposes of this section in the case of foreign tax shelters.

(Added Pub. L. 98–369, div. A, title I, §141(a), July 18, 1984, 98 Stat. 677; amended Pub. L. 99–514, title II, §201(d)(13), title XV, §1531(a), title XVIII, §1899A(54), Oct. 22, 1986, 100 Stat. 2142, 2749, 2961; Pub. L. 105–34, title X, §1028(a), Aug. 5, 1997, 111 Stat. 926.)

PRIOR PROVISIONS

A prior section 6111 was renumbered 6116 of this title.

AMENDMENTS

1997—Subsecs. (d) to (f). Pub. L. 105–34 added subsec. (d) and redesignated former subsecs. (d) and (e) as (e) and (f), respectively.

1986—Subsec. (c)(2)(A). Pub. L. 99–514, §1531(a), substituted "350 percent" for "200 percent".

Subsec. (c)(3)(B)(ii). Pub. L. 99–514, §201(d)(13), substituted "section 465(b)(3)(C)" for "section 168(e)(4)".

Subsec. (d)(1)(B). Pub. L. 99–514, §1899A(54), substituted "subparagraph" for "Subparagraph".

EFFECTIVE DATE OF 1997 AMENDMENT

Section 1028(e) of Pub. L. 105–34 provided that:

"(1) IN GENERAL.—Except as provided in paragraph (2), the amendments made by this section [amending this section and sections 6662 and 6707 of this title] shall apply to any tax shelter (as defined in section 6111(d) of the Internal Revenue Code of 1986, as amended by this section) interests in which are offered to potential participants after the Secretary of the Treasury prescribes guidance with respect to meeting requirements added by such amendments.

"(2) MODIFICATIONS TO SUBSTANTIAL UNDERSTATEMENT PENALTY.—The amendments made by subsection (c) [amending section 6662 of this title] shall apply to items with respect to transactions entered into after the date of the enactment of this Act [Aug. 5, 1997]."

EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by section 201(d)(13) of Pub. L. 99–514 applicable to property placed in service after Dec. 31, 1986, in taxable years ending after such date, with exceptions, see sections 203 and 204 of Pub. L. 99–514, set out as a note under section 168 of this title.

Amendment by section 201(d)(13) of Pub. L. 99–514 not applicable to any property placed in service before Jan. 1, 1994, if such property placed in service as part of specified rehabilitations, and not applicable to certain additional rehabilitations, see section 251(d)(2), (3) of Pub. L. 99–514, set out as a note under section 46 of this title.

Section 1531(b) of Pub. L. 99–514 provided that: "The amendment made by this section [amending this section] shall apply to any tax shelter (within the meaning of section 6111 of the Internal Revenue Code of 1986 [formerly I.R.C. 1954] as amended by this section) interests in which are first offered for sale after December 31, 1986."

EFFECTIVE DATE

Section 141(d) of Pub. L. 98–369, as amended by Pub. L. 99–514, §2, Oct. 22, 1986, 100 Stat. 2095, provided that:

"(1) IN GENERAL.—The amendments made by this section [enacting this section and section 6707 of this title and renumbering former section 6111 as section 6112 of this title] shall apply to any tax shelter (within the meaning of section 6111 of the Internal Revenue Code of 1986 [formerly I.R.C. 1954], as added by this section) any interest in which is first sold to any investor after August 31, 1984.

"(2) SUBSTANTIAL INVESTMENT TEST.—For purposes of determining whether any investment is a tax shelter by reason of section 6111(c)(1)(B)(iii) of such Code (as added by this section), only offers for sale after August 31, 1984, shall be taken into account.

"(3) FURNISHING OF SHELTER IDENTIFICATION NUMBER FOR INTERESTS SOLD BEFORE SEPTEMBER 1, 1984.—With respect to interests sold before September 1, 1984, any liability to act under paragraph (1) of section 6111(b) of such Code (as added by this section) which would (but for this sentence) arise before such date shall be deemed to arise on December 31, 1984."

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 6112, 6707 of this title.

# HEINONLINE

Citation: v.15 Title 26 sec. 1001-7804  1045 2000



Content downloaded/printed from
HeinOnline (http://heinonline.org)
Fri Aug 22 18:25:04 2014

-- Your use of this HeinOnline PDF indicates your acceptance
   of HeinOnline's Terms and Conditions of the license
   agreement available at http://heinonline.org/HOL/License

-- The search text of this PDF is generated from
   uncorrected OCR text.