UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHASTA STRATEGIC INVESTMENT FUND LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 04-cv-04264-RS<br>(Related to Case Nos. C-04-4309-RS, C-04-4398-RS, C-04-4964-RS, C-05-1123-RS, C-05-1996-RS, C-05-2835-RS, and C-05-3887-RS)<br><br>**ORDER ON SUPPLEMENTAL MOTIONS FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Pursuant to the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), petitioners initiated these proceedings to challenge the government's treatment of partnership items in their 1999 and 2000 tax returns. In Final Partnership Administrative Adjustments ("FPAAs") issued by the government, petitioners were denied tax losses incurred in connection with their participation in a complex financial product known as a Bond Linked Issue Premium Structure ("BLIPS"). After a lengthy stay and subsequent discovery, the government moved for summary judgment. In an order issued on July 31, 2014 (the "July Order" or the "Order"), the BLIPS transactions were determined to lack economic substance and findings were made regarding the provisional applicability of certain tax penalties at the partnership level.

The government now moves a second time for summary judgment as to the provisional applicability of the substantial understatement penalty. Petitioners have filed their own motion for summary judgment seeking findings that discrete losses and expenses incurred in connection with the BLIPS transactions have independent economic substance and are therefore properly

deductible. For the reasons stated below, petitioners' motion for summary judgment is granted in part and denied in part. To the extent not previously granted by the July Order, the government is entitled to summary judgment on the non-deductibility of the three categories of losses and expenses identified in petitioners' motion. In addition, the government's motion for summary judgment for a finding that the substantial understatement penalty is provisionally applicable at the partnership level is granted.

## II. BACKGROUND

The parties' motions implicate a number of issues previously addressed by the July Order. After considering the facts of the case[1] and petitioners' defenses at length, the Order found that the BLIPS transactions were shams and could not be recognized for tax purposes. *Shasta Strategic Invest. Fund LLC, et al. v. United States*, No. C–04–04264–RS, 2014 WL 3852416, at *9 (N.D. Cal. Jul. 31, 2014). This conclusion was based on two overarching findings. First, the July Order determined—based on objective measures including the "duration of the investments, the source of investment money, and the structure of the loans"— that the BLIPS transactions lacked any true economic substance beyond the generation of tax benefits. *Id.* at *5-8. Separately, the Order rejected petitioners' claims that their putative profit motive instilled economic substance into otherwise objectively illusory transactions. *Id.* at *8-9. Petitioners' "self-serving declarations" were not credited, and any "limited questions" possibly remaining as to their subjective intent were deemed insufficient to withstand the government's motion for summary judgment. *Id.* The July Order expressly concluded that "the BLIPS transactions should be disregarded for tax purposes as provided in the FPAAs." *Id.* at *9.

Turning to the next prong of the government's motion, the July Order found that genuine issues of material fact precluded a determination that the negligence penalty provisionally applied

---

[1] A detailed summary of the history and contours of the BLIPS transactions, based on undisputed facts derived from discovery materials and the parties' first round of summary judgment briefs, can be found in the July Order. *Shasta Strategic Invest. Fund LLC, et al. v. United States*, No. C–04–04264–RS, 2014 WL 3852416, at *1-4 (N.D. Cal. Jul. 31, 2014).

at the partnership level. The Order determined, however, that the valuation misstatement penalty was provisionally applicable. Finally, the government prevailed on its argument that the LLC-2 components of the BLIPS products were "tax shelters" as defined by Treasury Regulation § 1.6662-4(g).

### III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. Proc. 56(c)(1)(A). If the movant succeeds, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3; *see also* Fed. R. Civ. Proc. 56(c)(1)(B). A genuine issue of material fact is one that could reasonably be resolved in favor of the nonmoving party, and which could "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See id.* at 255.

### IV.   DISCUSSION

A.   Petitioners' Motion for Summary Judgment

  1.   *Taxability of Interest Income*

Petitioners first contend that interest income derived from the proceeds of loans underlying the BLIPS transactions should be exempt from taxation. There is no dispute that this treatment would be consistent with case law. See *Alessandra v. C.I.R.,* T.C. Memo. 1995-238, at *3 (1995) (taxpayer "not entitled to deduct amounts paid as interest if the underlying transaction is a sham" and by "the same token, a taxpayer need not recognize interest income attributable to a sham transaction."). Petitioners' interest expense deductions, which arose out of the sham BLIPS transactions, have been disallowed; consequently, the interest income derived from the loans will not be recognized for tax purposes.

2. *Deductibility of Certain Losses and Expenses*[2]

Petitioners next move for summary judgment on the deductibility of two categories of losses and expenses incurred by the partnerships in connection with the BLIPS transactions: (1) losses from foreign currency trading activity; and (2) management fees and guaranteed payments. According to petitioners, these losses and expenses are separable from the loans (which, they argue, formed the foundation of the July Order's economic substance finding) and were sustained in the primary pursuit of genuine profit.

"It is a basic premise of tax law that a transaction devoid of economic substance, or a sham transaction, simply is not recognized for federal taxation purposes, for better or worse." *Alessandra,* T.C. Memo 1995-238, at *10 (internal citations and quotation marks omitted). According to the government, this principle should end the discussion. Because the BLIPS transactions have been determined to be shams, it argues, no related deductions—whether arising from the loans, the currency investments, or otherwise—may be taken. Under some circumstances, however, courts have allowed taxpayers to deduct discrete expenses despite the fact that they were incurred in connection with a broader sham transaction. *See, e.g., Rice's Toyota World, Inc. v. Comm'r*, 752 F.2d 89, 95-96 (4th Cir. 1985) ("a sham transaction may contain elements whose form reflects economic substance and whose normal tax consequences may not therefore be disregarded"); *Bail Bonds by Marvin Nelson, Inc. v. Comm'r*, 820 F.2d 1543, 1548-49 (9th Cir. 1987) (reading *Rice's Toyota* to stand for the proposition that "indebtedness undertaken to fund a sham transaction is not *necessarily* a sham") (emphasis in original).[3]

---

[2] As a consequence of the government's non-opposition to their argument regarding interest income, petitioners have abandoned the prong of their motion seeking summary judgment on the deductibility of certain state taxes paid in connection with the BLIPS transactions. Consistent with the July Order, these expenses will be disregarded for tax purposes as provided in the FPAAs.

[3] More broadly, the Ninth Circuit has declined to adopt the economic substance test articulated by the Fourth Circuit in *Rice's Toyota*. *Casebeer v. Comm'r*, 909 F.2d 1360, 1363 (9th Cir. 1990)

ORDER ON SUPPLEMENTAL MOTIONS FOR SUMMARY JUDGMENT
CASE NO. 04-cv-04264-RS
4

Notwithstanding *Rice's Toyota* and its progeny, the government contends there is no need to evaluate the individual deductions sought by petitioners because the July Order forecloses characterization of any element of the BLIPS transactions, including the currency investments, as having economic substance. Indeed, the July Order made several determinations specific to the purpose and substance of the currency forward contracts, including findings that the investments had only a "remote likelihood of any profit during" the brief 60-day window during which they were held and were purchased "for the purpose of maintaining the façade of economic activity." 2014 WL 3852416 at *7-8. Likewise, petitioners' ostensible subjective belief in the potential profitability of the investments was considered and rejected in "the face of overwhelming evidence to the contrary." *Id.* at *9. As an element of a broader scheme, the July Order determined, the currency investments lacked "any true economic substance." *Id.* at *8.

Nevertheless, petitioners argue the July Order did not expressly find that the currency investments, independently considered in a vacuum, were a sham. In support of the argument that such individualized, component-level analysis is warranted, petitioners urge reliance on *ACM Partnership v. Commissioner*, 157 F.3d 231 (3d Cir. 1998). Much of the *ACM* decision was devoted to affirming the tax court's conclusion that a contingent installment sale transaction lacked economic substance, thus precluding the deduction of certain losses. *Id.* at 231-60. In so holding, the court of appeals rejected the partnership's professed non-tax justification for purchasing LIBOR notes in connection with the installment sale transaction. *Id.* at 255-57 ("the acquisition of the LIBOR notes operated to defeat the very purpose which ACM had advanced as a tax-independent justification"). Yet, although they were "not intended to serve non-tax purposes," the court permitted losses stemming from the LIBOR notes to be deducted because the securities were "separable, economically substantive items" and "not the centerpiece of the transactions." *Id.* at 260-63.

---

("Several courts, including this circuit, have found that the [Supreme] Court's holding in *Frank Lyon* was not intended to outline [the] rigid two-step analysis" applied by *Rice's Toyota*).

Under the circumstances of this case and in light of findings already made, the currency investments cannot be recognized for tax purposes. The July Order determined that the BLIPS transactions were interlinked financial products formulated to produce artificial tax losses for participants.[4] One element of this integrated transactional structure was a short-term investment in low-risk currency forward contracts whose only purpose was to maintain "the façade of economic activity." 2014 WL 3852416 at *8. The government argued that the entire scheme lacked economic substance; this court agreed, holding that the "BLIPS transactions should be disregarded for tax purposes as provided in the FPAAs." *Id.* at *18. One of the adjustments in the FPAAs was the disallowance of losses stemming from the currency trading activity. The July Order simply leaves no margin for a renewed analysis of the deductibility of these losses. Even if it did, the currency forward contracts are not capable of extrication from the broader tax shelter scheme. They were a significant element of a "turn-key" tax shelter product, serving the purpose of cloaking the BLIPS products with a veneer of substance while subjecting participants to only fleeting exposure to risk. *Id.* at *1-9.

*ACM* does not change this conclusion. In a parallel strand of authority, other courts have held that the "overall transaction . . . must have economic substance before" subcomponents may be deducted.[5] *Winn-Dixie Stores, Inc. v. Comm'r,* 113 T.C. 254, 279 (1999), *citing Lee v. Comm'r*, 155 F.3d 584, 587 (2d Cir. 1998). "If this were not the rule, every tax shelter, no matter how transparently sham," could nonetheless qualify for deductions. *Winn-Dixie*, 113 T.C. at 279, *quoting Lee*, 155 F.3d at 587. Given the prepackaged nature of the BLIPS products at issue here, the *Lee* rule is a better fit than the approach possibly dictated by *ACM*. Separate evaluation of the deductibility of each subcomponent of the BLIPS product—and, specifically, the currency forward

---

[4] As petitioners themselves argued in their opposition to the government's first motion for summary judgment, "the premium loan and foreign currency transactions went hand-in-hand." Dkt. 233 at 21.

[5] At issue in both *Lee* and *Winn-Dixie* was the deductibility of interest expenses arising from genuine indebtedness incurred in connection with sham transactions. *Lee*, 155 F.3d at 586; *Winn-Dixie*, 113 T.C. at 279.

contracts—is unwarranted.[6]

In passing, petitioners point out that the government conceded the deductibility of the BLIPS currency trading losses in the related *Klamath* litigation. They make little of this argument, though, perhaps because it demonstrates key distinctions between that case and this one. In *Klamath*, the district court was asked to determine only whether the loans central to the BLIPS transactions lacked economic substance. *Klamath Strategic Inv. Fund, LLC v. United States* (*Klamath II*), 472 F. Supp. 2d 885, 896, 897-98, 905 (E.D. Tex. 2007). The court answered this question in the affirmative, but it did not make findings regarding the economic substance of the BLIPS transactions as a whole. *Compare Klamath II*, 472 F. Supp. 2d. at 898 ("the loan transactions lacked economic substance") *with* July Order, 2014 WL 3852416, at *18 ("the BLIPS transaction lacked economic substance").

Moreover, the *Klamath* district court found that the individual BLIPS investors in that case had specifically sought out the forward contracts with the primary motive of making a profit; in fact, the currency investments were the animating purpose behind their participation in BLIPS. 472 F. Supp. 2d at 888, 891. In a corollary determination predicated on these unique facts, the court also found that the two partnerships at issue had not participated in the BLIPS scheme for the purpose of achieving artificial tax losses. *Id.* at 891 n.9 ("If they were only seeking tax benefits, then they would have entered into the transaction in 1999 . . . instead of waiting until 2000."), *affirmed in part by* 568 F.3d 537, 551 (5th Cir. 2009) ("the district court concluded that the partners had different motivations: [the *Klamath* taxpayers] at all times pursued the investment strategy with a genuine profit motive, while Presidio's primary intent was to achieve a

---

[6] In a similar but distinct argument, petitioners claim that even if a transaction has been held to lack economic substance, the deductibility of individual losses and expenses must still be evaluated under 26 U.S.C. § 165(c). Petitioners' own authorities demonstrate otherwise. *Keeler v. Comm'r*, 243 F.3d 1212 (10th Cir. 2001). In *Keeler*, the court of appeals made clear that (1) a finding of no economic substance *or* (2) a finding that a particular expense is not deductible under the relevant Internal Revenue Code provision would each be independently sufficient to bar deduction of that expense. *Id.* at 1220. Here, because the BLIPS transactions have been determined to be shams, there is no need to take the second step.

ORDER ON SUPPLEMENTAL MOTIONS FOR SUMMARY JUDGMENT
CASE NO. 04-cv-04264-RS

7

1  tax benefit").[7]  Based on these facts, the government did not contest (on appeal, at least)

2  deductions based on the losses the *Klamath* partnerships had incurred in connection with the

3  currency trading strategy—presumably because the district court had already determined the

4  partnerships had a genuine profit motive.  568 F.3d at 549, n.5.

5  These proceedings, in contrast, are focused only on objective and subjective indicia of

6  economic substance at the Presidio principal-level.   Such indicia were considered at length in the

7  July Order, which found that the BLIPS transactions—not merely the underlying loans—were

8  shams and should be disregarded for tax purposes.  Petitioners have failed to demonstrate that the

9  July Order leaves any room for the relief they request.  Flowing from this determination,

10  petitioners have not shown that management fees and guaranteed payments remitted in connection

11  with the BLIPS products are separable from the overall sham transaction.  Because they were paid

12  as transaction costs incident to an integrated scheme that lacked economic substance, the expenses

13  and taxes identified by petitioners cannot be deducted.  *Klamath Strategic Inv. Fund ex rel. St.*

14  *Croix Ventures v. United States*, 568 F.3d 537, 550 (5th Cir. 2009) ("expenses incurred in

15  connection with a sham transaction are generally not deductible");  *New Phoenix Sunrise Corp. v.*

16  *Comm'r*, 132 T.C. 161, 186 (2009) (fees paid to "implement a transaction" that lacked economic

17  substance cannot be deducted); *Napoliello v. Comm'r*, T.C. Memo. 2009-104, at *7 (2009)

18  ("petitioner may not deduct costs incurred to implement a transaction that lacks economic

19  substance"), *affirmed by* 655 F.3d 1060 (9th Cir. 2011).

20  For the foregoing reasons, petitioners' motion for summary judgment is granted in part as

21  to the non-taxability of the loan income and is otherwise denied.  To the extent the July Order did

22  not explicitly so find, the government is entitled to summary judgment on the non-deductibility of

23  those losses and expenses specified in the FPAAs.

---

[7] Although the two partnerships at issue in *Klamath* withdrew from the investments early like other investors, the district court found that they "did not have an understanding of the significant tax loss that would be generated by withdrawing at the end of the 60 day period."  472 F. Supp. 2d at 893.

1  B.      Government's Motion for Summary Judgment

In its motion, the government seeks summary judgment on the provisional applicability of the substantial understatement penalty. To obtain summary judgment, the government must clear two hurdles. First, it must demonstrate that a partnership-level finding on substantial understatement is authorized because the penalty "relates to an adjustment to a partnership item." 26 U.S.C. § 6226(f). If jurisdiction exists and the penalty provisionally applies, the government must further show there are no disputed issues of material fact as to petitioners' defenses to the penalty.

1. *Provisional Applicability of Substantial Understatement Penalty*

The Supreme Court's recent opinion in *United States v. Woods* defines the contours of a district court's authority to make penalty findings at the partnership level. 134 S. Ct. 557 (2013). *Woods* makes clear that under section 6626(f), "the court may decide only whether adjustments properly made at the partnership level have the potential to trigger the penalty." *Id.* at 564. Put another way, there is authority to make findings as to the provisional applicability of those penalties that "could result from an adjustment to a partnership item." *Id.* The "determination that a partnership lacks economic substance" qualifies as an "adjustment to a partnership item" for purposes of the TEFRA provisional applicability inquiry. *Id.* at 563. In determining whether a penalty provisionally applies, the court must consider a petitioner's argument that the relevant FPAA adjustments are "categorically incapable of triggering the penalty." *Id.* at 564.

The FPAAs have the potential to trigger the substantial understatement penalty. As described in the July Order, the net result of BLIPS was to create a tax loss for the client through an artificially inflated outside basis in the LLC-2. 2014 WL 3852416 at *3-7. Consistent with the determination that the BLIPS transactions lacked economic substance, tax losses stemming from partners' claimed outside basis in the LLC-2s will be disregarded. This creates the potential for partner-level understatements of tax in excess of $5,000 or 10%. In considering whether a penalty provisionally applies, a court is "not required to shut its eyes" to the likely impact of adjustments. *Woods*, 134 S. Ct. at 565; *VisionMonitor Software, LLC v. Comm'r*, T.C. Memo

ORDER ON SUPPLEMENTAL MOTIONS FOR SUMMARY JUDGMENT
CASE NO. 04-cv-04264-RS
9

2014-182 (2014) (provisionally applying substantial understatement penalty although actual "determination of an underpayment cannot happen at the partnership level").

Petitioners contend that, unlike the negligence and valuation misstatement penalties, the substantial understatement penalty is not susceptible to provisional application because it does not flow inevitably from the partnership adjustments. This is not the relevant test; the government must merely demonstrate that the adjustments at issue might potentially trigger the penalty. *Woods*, 134 S. Ct. at 564. Consistent with this requirement, *Woods* permits petitioners to foreclose provisional application of a penalty by showing that an adjustment is "incapable of triggering the penalty"—that it has no potential to cause the penalty to apply at the partner level. *Id.* Petitioners have made no such showing here.

Engaging in an item-by-item analysis of the Belford partnership return, petitioners further attempt to demonstrate that myriad unknown variables might impact whether BLIPS partners have indeed substantially understated their tax liability. Again, such uncertainty is immaterial. *See Woods,* 134 S. Ct. at 564 ("[I]mposing a penalty always requires some determinations that can be made only at the partner level. Even where a partnership's return contains significant errors, a partner may not have carried over those errors to his own return; or if he did, the errors may not have caused him to underpay his taxes by a large enough amount to trigger the penalty.") If, in subsequent partner-level proceedings, it is determined that a particular BLIPS participant did not substantially understate his tax liability, that partner will not be subject to the penalty. If, in contrast, another BLIPS participant's return reflects a deficiency greater than $5000 or 10%, that partner may be subject to the penalty. Under the latter set of circumstances, this court's partnership-level determination of whether certain defenses to that penalty apply will help produce consistent outcomes, as intended by TEFRA. *See NPR Investments, LLC ex rel. Roach v. United States*, 740 F.3d 998, 1012 (5th Cir. 2014) (substantial authority is a "question common to all [partners] and does not depend on an individual taxpayer's circumstances").

    2.    *Reasonable Cause*

1    Although it has already been determined that they lack a partnership-level reasonable cause

2 defense to accuracy penalties, petitioners seek to revive this defense as it relates to the loss and

3 expense deductions addressed in their motion for summary judgment.  It would make little sense,

4 however, to hold that petitioners have a reasonable cause defense for some partnership items and

5 not others where the entire BLIPS scheme has been determined to lack economic

6 substance.  Consistent with this order's determination that the deductibility of the losses and

7 expenses identified in petitioners' motion has been settled by the July Order, there is no basis to

8 reconsider petitioners' entitlement to the reasonable cause defense.

9    3.    *Substantial Authority*

10   In addition to finding the substantial and gross valuation misstatement penalties

11 provisionally applicable and denying summary judgment on the negligence penalty, the July Order

12 determined that the LLC-2s qualified as "tax shelters" under the Treasury Regulations.  As a

13 consequence of this finding, to prevent provisional application of the substantial understatement

14 penalty petitioners must show that:  (1) there was substantial authority for the tax treatment of the

15 partnership item; and (2) they reasonably believed the tax treatment of that item was more likely

16 than not the proper treatment.  Treas. Reg. § 1.6662-4(g)(1)(i)(A)-(B).  The substantial authority

17 standard is objective, and will be met where the "weight of the authorities supporting the treatment

18 is substantial in relation to the weight of the authorities supporting contrary treatment."  *Id.* at §

19 1.6662-4(d)(3).

20   The question of substantial authority was addressed by the July Order in connection with its

21 finding that the LLC-2s were tax shelters.  In relevant part, the Order reasoned that substantial

22 authority did not support petitioners' treatment of the BLIPS loan premiums as contingent.  2014 WL

23 3852416 at *11.  The government seeks to translate this reasoning into a broader finding that the

24 BLIPS transactions, taken in their entirety, were not backed by substantial authority.

25   As they have done throughout this round of briefing, petitioners attempt to reframe the issue.

26 They contend that the question is not whether treatment of the loan premiums as contingent was

justified. Instead, petitioners argue, the relevant inquiry at this stage is whether other collateral deductions were supported by substantial authority. This argument dovetails with the central premise of petitioners' motion—that "a sham transaction may contain elements whose form reflects economic substance and whose normal tax consequences may not therefore be disregarded." *Rice's Toyota World v. Comm'r*, 752 F.2d 89, 96 (4th Cir. 1985). As noted above, however, the *Rice's Toyota* principle is inapplicable here; it does not mandate that the BLIPS transactions be disaggregated into their component parts for purposes of determining whether penalties are provisionally applicable. Accordingly, petitioners' proposed framework—whereby they would be permitted to argue substantial authority independently for every individual deduction claimed in connection with the BLIPS transactions—will not be adopted.

Turning to the question of whether substantial authority supported the BLIPS transactions generally, the July Order determined that the two primary authorities cited in KPMG's opinion letter were inapposite and did not justify the tax positions taken by the partnerships. 2014 WL 3852416 at *9 (agreeing with cases holding that *"Helmer* is inapplicable in this situation" and further determining that "*LaRue* is also inapplicable"). The July Order's determination that the BLIPS transactions were a sham is also central to this analysis. *Stobie Creek Investments, LLC v. United States*, 82 Fed. Cl. 636, 707 (2008) *(*"no substantial authority exists to support recognition of tax results that are premised on transactions with no appreciable business purpose beyond conferring tax benefits"). The relevant inquiry for purposes of determining whether the substantial understatement penalty provisionally applies is not whether discrete aspects of the transaction might—if they had not been part and parcel of a sham—have been otherwise treated properly on the returns. The question is whether the tax positions claimed in connection with the BLIPS products, taken as a whole, were authorized.

Petitioners do not seriously contest that the primary purpose and outcome of the BLIPS products—the creation of large tax losses through the artificial inflation of partners' outside basis in the LLC-2s—was unsupported by substantial authority. Accordingly, that defense is inapplicable here and cannot be relied upon to support the validity of other related tax deductions stemming from the transactions. Because petitioners have not demonstrated that substantial authority supported the

1  BLIPS transactions, there is no need to address the question of whether they had a reasonable belief in

2  the propriety of the tax treatment they claimed.

### V.   CONCLUSION

In some cases, courts have found discrete, economically substantive components of sham transactions to be separable from the larger scheme and thus potentially deductible. This is not such a case. In evaluating the prepackaged tax shelter product at issue here, it would be misguided to discriminate among the various transactional elements and find that some were instilled with economic substance while others were not.

As a result, petitioners' motion for summary judgment is granted in part as to the non-taxability of the loan income and is otherwise denied. The government is entitled to summary judgment finding that losses and expenses stemming from the BLIPS transactions, as specified in the FPAAs, will be disregarded for tax purposes and cannot be deducted. The government's separate motion is granted: the substantial understatement penalty provisionally applies at the partnership level. No later than three weeks from the date of this order, the parties shall each submit a letter to the court clarifying their respective positions on what partnership-level issues, if any, remain in these related cases.

**IT IS SO ORDERED**.

Dated:  December 19, 2014

_____
RICHARD SEEBORG
United States District Judge